WAKE COUNTY HOSPITAL SYSTEM, INC. AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, PLAINTIFFS v. SAFETY NATIONAL CASUALTY CORPORATION, DEFENDANT

No. COA96-1038

(Filed 5 August 1997)

1. **Workers' Compensation § 132 (NCI4th)— assault by fellow employee—action by employer under excess workers' compensation policy—causal relationship to job**

The trial court properly granted summary judgment for defendant-insurer, Safety, on plaintiff's breach of contract claim where an employee of plaintiff-Hospital was abducted, raped, and murdered by another employee; the victim's estate and family brought an action against the Hospital seeking damages for

wrongful death and infliction of emotional distress arising from the Hospital negligently hiring, supervising, and retaining the employee who committed the crime without regard to his violent propensities; the Hospital notified both St. Paul, which had issued to the Hospital a general liability policy and an umbrella excess policy, and this defendant, Safety, which had issued a "Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement"; and, as a result of a settlement in which it did not participate, the Hospital filed this action for the amount allegedly owed under Safety's policy. The courts in North Carolina have consistently held that an intentional assault in the workplace by a fellow employee or third party is an accident that occurs in the course of employment but does not arise out of the employment unless a job related motivation or some other causal relation between the job and the assault exists. Following the reasoning of *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, the facts are sufficient to show a causal relationship between Mrs. Crews' employment and her death; however, discovery materials established that death benefits payable under the Workers' Compensation Act were within the Hospital's self-insured retention and Safety's excess coverage would not apply.

2. **Workers' Compensation § 132 (NCI4th)— assault by coworker—allegations of negligent hiring—workers' compensation—exclusivity provisions**

   No coverage was provided to plaintiff-Hospital under an excess workers' compensation insurance policy where an employee was abducted, raped, and murdered by another employee, the workers' compensation coverage did not apply, and the hospital contended that the estate was entitled to maintain an action outside the Workers' Compensation Act for negligent hiring and retention under policy language concerning "Employers' Liability Laws." The exclusivity provision of the Workers' Compensation Act precludes a claim for ordinary negligence, with an exception for claims meeting the stringent proof standards of *Woodson v. Rowland*, 329 N.C. 330, but employees have not been permitted to recover damages from an employer in a *Woodson* claim for injury or death resulting from negligent hiring or retention. Although the allegations here may be sufficient to allege that the Hospital was negligent in hiring, firing and retaining the employee who committed the crime, they do not meet the requirements of *Woodson*. Even assuming a *Woodson*

claim that could survive dismissal, this policy provides coverage only for losses sustained due to an "occurrence," which is defined as an "accident." "Accident" is not defined, but it is clear that conduct sufficient to support a *Woodson* claim cannot be deemed an "accident"; therefore such conduct cannot constitute an occurrence within the meaning of this policy.

**3. Insurance § 949 (NCI4th)— excess workers' compensation coverage—negligent hiring and retention**

Coverage was not provided under an excess workers' compensation policy for the employer-hospital's liability under an ordinary negligence claim by the estate of an employee who was abducted, raped, and murdered by another employee. An employee may bring a common law action for personal injury against his or her employer where the injury is not connected to the employment, but the claim would not be covered by this policy because the hospital's liability would not flow from its capacity as an employer and therefore would not arise under "Employers' Liability Laws" under the policy. Moreover, the general liability policy from the other insurer, St. Paul, would provide coverage with limits sufficient to satisfy the entire settlement in this case.

**4. Unfair Competition or Trade Practices § 39 (NCI4th)— excess workers' compensation insurance coverage—no coverage of common law actions—no unfair practices**

An insurer (Safety) did not commit an unfair and deceptive trade practice by selling a policy to plaintiff-Hospital representing that the policy provided coverage under "Employers' Liability Laws" without warning that it would subsequently take the position that the policy did not provide coverage against common law actions that are not barred by the exclusivity provisions of the Workers' Compensation Act. Although not specifically pleaded, the Hospital argues that Safety misrepresented its coverage in violation of statutes which define unfair acts and practices in the insurance industry, but they did not make the necessary allegation that Safety engaged in prohibited conduct with such frequency as to indicate a general business practice. Even if an unfair and deceptive practice was properly alleged, the policy was labeled a "Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement" and the Hospital's executive vice-president stated in his deposition that the Hospital

bought the policy for the purpose of having excess workers' compensation coverage. The policy provides narrow coverage, but narrow coverage in and of itself is not illusory or deceptive. There is no evidence that Safety misrepresented the extent of the coverage provided by the policy.

Appeal by plaintiffs from order entered 22 May 1996 by Judge Julius A. Rousseau, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 30 April 1997.

*Smith Helms Mulliss & Moore, L.L.P., by Martin N. Erwin for plaintiff-appellants.*

*Robinson Maready Lawing & Comerford, L.L.P., by Robert J. Lawing and Jane C. Jackson for defendant-appellee.*

MARTIN, John C., Judge.

Wake County Hospital System, Inc., ("the Hospital") brought this action to recover under an insurance policy issued by defendant Safety National Casualty Corporation ("Safety"). Defendant answered, denying that its policy provided coverage for the claim asserted by the Hospital. Defendant's motion to join St. Paul Fire and Marine Insurance Company ("St. Paul") as a party plaintiff was granted. After discovery, all parties moved for summary judgment.

The materials before the trial court established the following:

Defendant Safety issued its "Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement" to the Hospital, providing coverage for "Loss sustained . . . because of liability imposed . . . by the Workers' Compensation or Employers' Liability Laws of: [North Carolina] . . . on account of bodily injury or occupational disease due to Occurrences taking place . . . to Employees. . . ." The policy was excess coverage to the Hospital's self-insured retention of $225,000 and provided coverage of $500,000. The policy was in force at all times pertinent to this action.

In addition, at all times pertinent to this action, the Hospital was covered by two policies issued by St. Paul. One policy was a general liability policy providing coverage of $1,000,000 for a "covered bodily injury" "caused by an event" and excluding from coverage bodily injury which was "expected or intended by a protected person," "bodily injury to any employee arising out of and in the course of . . . employment," and any obligation under the workers' compensation

laws. The other St. Paul policy was an Umbrella Excess policy with a coverage limit of $10,000,000 providing excess coverage for claims covered by listed underlying policies, including both the Safety policy and the St. Paul general liability policy.

On 8 August 1990, Kimberly Crews was employed as a social worker by the Hospital. As she was leaving work on that date, she was abducted in the Hospital's parking lot by Michael Sexton, a Hospital employee who worked in the laundry. Sexton forced Mrs. Crews to drive him to a location away from the Hospital, where he raped and murdered her. Sexton was subsequently convicted of kidnaping, rape, and murder. On 10 July 1992, Mrs. Crews' husband, who was the administrator of her estate, and her minor child brought an action ("the Crews lawsuit") against the Hospital seeking compensatory and punitive damages for her wrongful death and for infliction of emotional distress. The complaint in the Crews lawsuit alleged that the Hospital negligently hired, supervised, and retained Michael Sexton without regard to his violent propensities and that the Hospital's gross negligence subjected Mrs. Crews and other employees to an unreasonable risk and a substantial certainty of serious injury.

The Hospital placed both St. Paul and Safety on notice when the Crews lawsuit was filed. St. Paul issued a reservation of rights letter and agreed to provide the Hospital with a defense. Safety also issued a reservation of rights letter, but under the terms of its policy, Safety had no obligation to provide a defense.

At a settlement conference conducted in connection with the Crews lawsuit, the Hospital and St. Paul indicated their willingness, in principle, to contribute to a settlement in the amount of $1,000,000, even if Safety declined to participate. When Safety announced that it would not participate in the settlement, the Hospital and St. Paul entered into a Loan Receipt and Non-Waiver Agreement, pursuant to which the Hospital contributed its self-insured retention of $225,000 and St. Paul contributed $275,000, the amount for which it would be liable if Safety contributed its limits of $500,000. Of the remaining $500,000, the Hospital paid $250,000 and St. Paul "loaned" the Hospital the remaining $250,000 to be repaid from any amounts recovered in this action. Safety agreed that if the Hospital elected to proceed with a settlement of the underlying action, Safety would not raise as a defense in any later litigation the absence of consent under the Safety policy.

WAKE COUNTY HOSP. SYS. v. SAFETY NAT. CASUALTY CORP.

[127 N.C. App. 33 (1997)]

After completing settlement of the Crews lawsuit, the Hospital filed the present action alleging that Safety owes $500,000 under its policy, and that its denial of coverage constitutes an unfair and deceptive practice. The trial court granted Safety's motion for summary judgment. Plaintiffs appeal.

---

A party moving for summary judgment must establish that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56; *Glover v. First Union National Bank*, 109 N.C. App. 451, 428 S.E.2d 206 (1993). There are no disputed issues of fact in this case; resolution of the issue of Safety's coverage involves questions of law, properly resolved by summary judgment. *Waste Management v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986); *Duke University v. St. Paul Fire and Marine Insurance Co.*, 96 N.C. App. 635, 386 S.E.2d 762, *disc. review denied*, 326 N.C. 595, 393 S.E.2d 876 (1990).

## I.

In their first argument, plaintiffs contend the Safety policy provides coverage for the Hospital's liability in this case. They argue that the policy provides coverage for liability imposed under "Employers' Liability Laws," language which is sufficiently broad to include liability for negligent hiring, supervision and retention, and liability imposed pursuant to *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991) (holding that misconduct by an employer which is substantially certain to cause injury to an employee is actionable at common law, notwithstanding the exclusivity provisions of the Workers' Compensation Act). Defendant contends that, no matter which analysis we choose to apply to determine the basis for the Hospital's liability to the Crews plaintiffs, the end result is that the Safety policy does not provide coverage to the Hospital. We agree with defendant.

## A.

[1] Because the policy was a "Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement," we must first determine whether the Hospital had liability under the Workers' Compensation Act for the injuries to Mrs. Crews. In order for an injury to be compensable under the Workers' Compensation Act, a claimant must prove: "(1) [t]hat the injury was caused by an accident; (2) that the injury arose out of the employment; and (3) that the injury

was sustained in the course of employment." *See Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977).

In North Carolina, courts have consistently held that an intentional assault in the work place by a fellow employee or third party is an accident that occurs in the course of employment, but does not arise out of the employment unless a job-related motivation or some other causal relation between the job and the assault exists. *Gallimore*, 292 N.C. 399, 233 S.E.2d 529 (holding that the death of an employee at a shopping mall who was kidnaped in the parking lot by a third party did not arise out of the employment because the risk of assault was common to the neighborhood, not peculiar to the employment); *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 377 S.E.2d 777, *affirmed*, 325 N.C. 702, 386 S.E.2d 174 (1989) (holding that a causal relation existed between the employment and the assault of a resort employee who was kidnaped and assaulted by a guest of the resort); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986) (holding that sexual harassment did not arise out of the employment for a waitress because it was not a risk to which an employee is exposed because of the nature of the employment).

We must determine whether a causal relation exists in this case between Ms. Crews' job and the assault such that the death arose out of the employment and is compensable under the Workers' Compensation Act. Here, the evidence indicates that Mrs. Crews was abducted from the employee parking lot, she was assaulted and killed on an adjacent street, she was carrying work materials, and the assailant was a co-employee. The case of *Culpepper v. Fairfield Sapphire Valley, supra*, is illustrative. In *Culpepper*, plaintiff was a cocktail waitress at a resort who was on her way home from work when she noticed a driver having car trouble on the side of the road leading to the resort. She recognized the driver as a resort guest and given her employer's instructions to be courteous to resort guests, she stopped in order to assist the guest. She was kidnaped and assaulted by the driver. In holding that plaintiff's injuries were compensable under the Workers' Compensation Act, the Court concluded that there was a causal relation between plaintiff's employment and the assault such that the plaintiff's injuries arose out of her employment. In addition, the Court stated that "course of employment" included the employer's premises and may extend to adjacent premises or roads. *Id.* Following the reasoning in *Culpepper*, we believe the facts here are sufficient to show a causal relation-

ship between Mrs. Crews' employment and her death. Thus, Mrs. Crews' death was compensable under the Workers' Compensation Act. Discovery materials established that death benefits in the amount of $176,500 would be payable to Mrs. Crews' estate under the Workers' Compensation Act, an amount within the Hospital's self-insured retention. Therefore, Safety's excess coverage would not apply.

[2] The Hospital contends, however, that Mrs. Crews' estate was entitled to maintain an action outside the Workers' Compensation Act for negligent hiring and retention, and that the Hospital's liability in such an action is covered under the language of the Safety policy providing coverage for the Hospital's liability imposed by "Employers' Liability Laws." Under the Workers' Compensation Act, an employee's remedies are exclusive as against the employer where the injury is caused by an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-10.1 (1991). Thus, the exclusivity provision of the Act precludes a claim for ordinary negligence, even when the employer's conduct constitutes willful or wanton negligence. *McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 364 S.E.2d 186 (1988); *Stack v. Mecklenburg County*, 86 N.C. App. 550, 359 S.E.2d 16, *disc. review denied*, 321 N.C. 121, 361 S.E.2d 597 (1987). However, an exception to this exclusivity exists for claims meeting the stringent proof standards of *Woodson*, 329 N.C. 330, 407 S.E.2d 222. *Woodson* permits a plaintiff to pursue both a workers' compensation suit and a civil suit against an employer in those narrowly limited cases where injury or death "was the result of intentional conduct by [an] employer which the employer knew was substantially certain to cause serious injury or death. . . ." *Id.* at 337, 407 S.E.2d at 226. Willful and wanton negligence alone is not enough to establish a *Woodson* claim; a higher degree of negligence is required. *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993). "The conduct must be so egregious as to be tantamount to an intentional tort." *Id.* at 239, 424 S.E.2d at 395.

Employees have not been permitted to recover damages from an employer in a *Woodson* claim for injury or death resulting from negligent hiring or retention. *Bynum v. Fredrickson Motor Express Corp.*, 112 N.C. App. 125, 434 S.E.2d 241 (1993) (holding that employer's conduct did not rise to the level of proof required for a *Woodson* claim sufficient for a claim of negligent hiring where the plaintiff was injured by the negligence of a co-worker). Here, the only allegations contained in the complaint in the Crews lawsuit that could possibly

be construed as asserting a *Woodson* claim were that the Hospital hired a laundry employee with a relatively minor criminal record, and failed to fire that employee even though it had knowledge that he had engaged in sexual relations with other hospital employees at work, knew that he had a violent temper, and had knowledge of his alleged but unproven altercations with female co-employees in which no one was injured. Though these allegations may be sufficient to allege that the Hospital was negligent in hiring and retaining Sexton, the allegations are insufficient to allege conduct on the part of the Hospital substantially certain to cause injury or death and, therefore, do not meet the stringent requirements of *Woodson*. Without a *Woodson* claim, workers' compensation is the only remedy available in this case; any other action is barred as a matter of law. Since there is no other claim asserted in the Crews lawsuit by which the Hospital may be held liable under "Employers' Liability Laws," there is no coverage provided by the Safety policy.

Moreover, even if we assume *arguendo* that a *Woodson* claim could survive dismissal, Safety would still not be liable for coverage under its policy. The Safety policy provides coverage only for losses sustained due to an "occurrence." Occurrence is defined as an "accident," but accident is not defined within the terms of the policy.

In *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 412 S.E.2d 318 (1992), the Supreme Court makes it clear that conduct sufficient to support a *Woodson* claim cannot be deemed an "accident" and, therefore, cannot constitute an "occurrence" within the meaning of the Safety policy. This holding that the degree of intent required to establish a *Woodson* claim could not constitute an "accident" was confirmed by the Court's decisions in *Lyles v. City of Charlotte*, 344 N.C. 676, 477 S.E.2d 150 (1996), *reh'g denied*, 345 N.C. 355, 483 S.E.2d 170 (1997) (holding that plaintiff's claim that the City's action was substantially certain to cause injury amounted to a claim that the occurrence was not accidental, thereby removing the claim from coverage under the policy) and *Russ v. Great American Ins. Companies*, 121 N.C. App. 185, 464 S.E.2d 723 (1995), *disc. review denied*, 342 N.C. 896, 467 S.E.2d 905 (1996) (holding that an injury that is intentional or substantially certain to be the result of an intentional act is not an accident).

In view of these cases, if Mrs. Crews' estate could have met the stringent requirements for a *Woodson* claim by showing that the Hospital's negligent conduct was "substantially certain to cause death or serious injury," under *Stox* such conduct would not be accidental

and, therefore, not an "occurrence" within the meaning of the Safety policy.

### B.

**[3]** If we assume *arguendo* that Mrs. Crews' death was not compensable under the Workers' Compensation Act, we must determine whether Safety provided coverage for the Hospital's liability under an ordinary negligence claim. We hold that it would not.

An employee may certainly bring a common law action for personal injury against his or her employer where the injury is not connected to the employment.

> The Workmen's Compensation Act relates to the rights and liabilities of employee and employer by reason of injuries . . . arising out of and in the course of the employment relationship. . . . The Act does not, however, take away any common law right of the employee, even as against the employer, provided the right be one which is disconnected with the employment and pertains to the employee, not as an employee but as a member of the public (citations omitted).

*Bryant v. Dougherty,* 267 N.C. 545, 548, 148 S.E.2d 548, 551 (1966). Thus, if Mrs. Crews' estate contended and established that her death was due to the Hospital's negligent breach of some duty owed her, not as an employee but as a member of the public, it could maintain an action at common law to recover for such negligence. In such event, however, the claim would not be covered by the Safety policy because the Hospital's liability would not flow from its capacity as an employer and, therefore, would not arise under "Employers' Liability Laws." Moreover, as acknowledged by St. Paul in discovery, in such a case, the St. Paul general liability policy would provide "dollar one" coverage, with limits sufficient to satisfy the entire settlement in this case.

Thus, defendant has met the burden of establishing that there is no genuine issue of material fact and, accordingly, defendant's motion for summary judgment on plaintiff's breach of contract claim was properly allowed.

### II.

**[4]** Plaintiffs next contend that Safety committed an unfair and deceptive practice because it sold the Hospital a policy that deceptively represented that it provided coverage under "Employers'

Liability Laws" without warning that it would subsequently take the position that the policy did not provide coverage for the Hospital's liability against "the right of employees to bring common law actions against employers that are not barred by the exclusivity provisions of the Workers' Compensation Act." Thus, plaintiffs assert, the policy was illusory. We reject these contentions.

"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (1994). To support an unfair trade practice claim, a plaintiff must show: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991).

Although not specifically pleaded, the Hospital argues that Safety misrepresented the coverage provided by its policy, in violation of G.S. § 58-63-15(1) and G.S. § 58-63-15(11)(a), statutes which define acts as unfair acts and practices in the insurance business. Initially we note that, to state a claim for an unfair and deceptive practice under G.S. § 58-63-15(11)(a), a party must allege that the defendant insurer engaged in the prohibited conduct "with such frequency as to indicate a general business practice." N.C. Gen. Stat. § 58-63-15(11)(a) (1994); *Von Hagel v. Blue Cross & Blue Shield*, 91 N.C. App. 58, 60, 370 S.E.2d 695, 698 (1988). In their complaint, plaintiffs Hospital and St. Paul made no such allegations against Safety. *Beasley v. National Savings Life Ins. Co.*, 75 N.C. App. 104, 330 S.E.2d 207 (1985), *disc. review improv. allowed*, 316 N.C. 372, 341 S.E.2d 338 (1986) (affirming dismissal of action where plaintiff failed to plead that alleged violations occurred with such frequency as to indicate a general business practice).

Even if an unfair and deceptive practice was properly alleged, plaintiffs' showing at summary judgment is insufficient to show a genuine issue of material fact and to survive entry of summary judg-ment in defendant's favor. The Safety policy was labeled a "Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement." It provided coverage in excess of the Hospital's $225,000 self-insured retention obligation. The Hospital's Executive Vice-President stated in his deposition that the Hospital bought the Safety policy for the purpose of having excess workers' compensation cov-erage. The policy provides narrow coverage, but narrow coverage in

and of itself is not illusory or deceptive. There is no evidence that Safety misrepresented the extent of the coverage provided by the policy. Accordingly, we find that summary judgment was properly granted in defendant's favor as to the Hospital's claim for unfair and deceptive practices.

The order of the trial court is

Affirmed.

Judges COZORT and McGEE concur.

Judge Cozort concurred in this opinion on or before 31 July 1997.