MARTHA FALLS CLARK, Employee, Plaintiff v. THE SANGER CLINIC, P.A., Employer; ITT HARTFORD INSURANCE CO., Carrier; Defendants

No. COA00-153

(Filed 6 March 2001)

**1. Workers' Compensation— Form 21 agreement—no challenge unless fraud, misrepresentation, undue influence, or mutual mistake**

Ordinarily, a party that enters into a Form 21 agreement for compensation cannot challenge any provision of the agreement unless it appears to the satisfaction of the Industrial Commission that there had been error due to fraud, misrepresentation, undue influence, or mutual mistake.

**2. Workers' Compensation— maximum weekly benefit—date of calculation**

The Industrial Commission did not err by concluding that plaintiff employee was entitled to weekly compensation at the maximum compensation rate for the year 1993 at the rate of $442.00 and continuing for the remainder of her life, because: (1) plaintiff sustained her compensable injury on 16 April 1993, and N.C.G.S. § 97-29 provides that the maximum weekly benefit calculated 1 July 1992 took effect on 1 January 1993; and (2) the express language of N.C.G.S. § 97-29 provides that the maximum benefit calculated 1 July 1993 took effect 1 January 1994, and plaintiff's claim did not originate on or after 1 January 1994.

**3. Workers' Compensation— maximum weekly benefit—failure to adjust annually—due process—equal protection**

N.C.G.S. § 97-29 does not violate the due process and equal protection clauses of the constitution although it fails to adjust a disabled employee's compensation rate to equal the maximum weekly benefit computed annually, because: (1) N.C.G.S. § 97-29 neither burdens a suspect class, nor affects a fundamental class since it is purely economic regulation and thus only needs to satisfy the rational basis level of scrutiny; and (2) the application of N.C.G.S. § 97-29 bears a rational relationship to a legitimate state interest since limiting applicability of the maximum rate based on the year of injury enables insurance providers to project future exposure and calculate premiums accordingly.

CLARK v. SANGER CLINIC, P.A.

[142 N.C. App. 350 (2001)]

**4. Appeal and Error— preservation of issues—failure to include reference in record on appeal**

Although plaintiff contends in a workers' compensation case that N.C.G.S. § 97-29 violates the Americans with Disabilities Act (ADA) under 42 U.S.C. § 1201 et seq., plaintiff did not preserve this issue because she failed to include any reference to the ADA in the record on appeal as required by N.C. R. App. P. 10(c)(1).

**5. Workers' Compensation— motion for approval of additional medical providers and treatment—reasons for Commission's ruling required**

The Industrial Commission's decision to deny plaintiff employee's motion under N.C.G.S. § 97-25 for approval of additional medical providers and treatment related to her stomach reduction surgery and the resulting complications in a workers' compensation case is reversed and remanded, because it is unclear whether the Commission abused its discretion when it did not state any reason for its ruling.

Appeal by plaintiff from opinion and award entered 4 October 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 January 2001.

*Seth M. Bernanke for plaintiff-appellant.*

*John F. Morris and Mark D. Gustafson for defendants-appellees.*

TIMMONS-GOODSON, Judge.

Martha Falls Clark ("plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission ordering plaintiff's former employer, the Sanger Clinic ("defendant-employer"), and its insurance carrier, ITT Hartford Insurance Company, (collectively, "defendants") to "pay plaintiff permanent total disability compensation at the rate of $442.00 per week continuing for the remainder of her life." Plaintiff's position is that her rate of compensation should increase annually with the maximum benefit calculated in accordance with section 97-29 of the North Carolina General Statutes. For the reasons that follow, we conclude that the rate and duration of the compensation as awarded by the Commission comports with the provisions of section 97-29.

The facts relevant to the issues raised on appeal are summarized as follows: Plaintiff, a registered nurse, began working for defendant-

employer in 1977 as the Director of the Pacemaker Clinic, a position usually held by a physician. In her capacity as director, plaintiff assumed responsibility for thousands of pacemaker and fibrillator patients. Her duties included tending to the patients' wounds, monitoring their medication, and programming their devices. Plaintiff typically worked fourteen to eighteen hours per day, and she was on-call seven days per week, twenty-four hours per day. At the time of her injury, plaintiff earned an average weekly wage that entitled her to the maximum compensation rate for the year 1993. Plaintiff was forty-eight years old when her claim for disability benefits was heard.

Plaintiff was injured on 16 April 1993 while pushing a cart transporting 600 to 800 pounds of equipment into an elevator. The wheel of the cart became wedged in the threshold of the elevator, and in her attempt to dislodge the wheel, plaintiff suffered an admittedly compensable injury to her back. Plaintiff subsequently underwent an extensive course of treatment, the specifics of which are not pertinent to this appeal. Then, in February 1994, plaintiff's treating physician recommended that she pursue a formal weight loss program to improve her condition by alleviating some of the pressure on her back. For treatment of her weight problem, plaintiff visited Dr. Carol Jean Smith of the Bariatric Medical Center in Asheville, North Carolina. Dr. Smith referred plaintiff to Dr. Martin Fischer for gastric bypass surgery, which he performed on 8 January 1998 at St. Luke's Hospital in Tryon, North Carolina. Following the procedure, plaintiff developed a blood infection and pulmonary abnormalities. She was, therefore, transferred to Memorial Mission Hospital in Asheville, where she received emergency medical attention. Because plaintiff's condition proved to be beyond the expertise of her attending physicians at Memorial Mission, she was again transferred to North Carolina Baptist Hospital in Winston-Salem. There, she remained until her discharge on 29 June 1998.

Plaintiff requested a hearing before the Commission on 14 November 1996, alleging that she was entitled to payment of attorneys fees and yearly increases in compensation based on the maximum calculated under section 97-29 of the General Statutes. Plaintiff's claim was heard, and the deputy commissioner awarded her "permanent total disability compensation at the rate of $442.00 per week continuing for the remainder of her life." Plaintiff appealed this decision to the Full Commission and moved, pursuant to section 97-25 of the General Statutes, for authorization of the addi-

CLARK v. SANGER CLINIC, P.A.

[142 N.C. App. 350 (2001)]

tional medical treatment provided in connection with her stomach reduction surgery and the resulting complications. The Full Commission conducted a review and entered an opinion and award denying plaintiff's motion for authorization and affirming the ruling of the deputy commissioner. From the decision of the Full Commission, plaintiff now appeals.

Plaintiff's leading argument is that the rate at which she is compensated should increase each year with the maximum weekly benefit computed under section 97-29 of our General Statutes. Plaintiff takes the position that the current practice of the Industrial Commission—to establish a permanent compensation rate for disabled workers based on the date of their injury—is an erroneous application of the statute. Further, plaintiff contends that the existing practice is inconsistent with the spirit and purpose of the Workers' Compensation Act, which is to protect the injured worker.

[1] At the outset, we consider whether plaintiff has properly preserved the right to challenge her rate of compensation. The record reveals that the parties executed a Form 21 Agreement for Compensation, pursuant to which defendants undertook to compensate plaintiff at a rate of $442.00 per week, "beginning [5 June 1995] and continuing for necessary weeks." The Commission approved the agreement on 23 January 1996, at which time the agreement became binding on the parties and assumed the force and effect of a ruling by the Commission. *See Pruitt v. Publishing Co.*, 289 N.C. 254, 258, 221 S.E.2d 355, 358 (1976) (acknowledging that a Form 21 Agreement as approved by the Commission "becomes an award enforceable, if necessary, by a court decree"). Thereupon, neither party was in a position to challenge any provision of the agreement, "unless it [was] made to appear to the satisfaction of the Commission 'that there [had] been error due to fraud, misrepresentation, undue influence or mutual mistake.' " *Id.* at 259, 221 S.E.2d at 358 (N.C. Gen. Stat. § 97-17 (1972)).

According to the record, plaintiff entered into the Form 21 Agreement, thereby accepting a weekly rate of compensation at $442.00, on 11 July 1995, more than two years after her 16 April 1993 injury. In the interim between the injury date and the date of the agreement, the maximum weekly benefit was re-computed under section 97-29 of the General Statutes three times. Yet, nowhere in the agreement is there a provision that plaintiff's compensation be adjusted upward to reflect the maximum rate determined annually.

Rather, it appears that plaintiff first asserted a right to yearly increases on 14 November 1996, when she filed a request for a hearing on her claim.

Furthermore, at no time during these proceedings has plaintiff sought to have the Form 21 Agreement set aside. Neither has she demonstrated " 'error due to fraud, misrepresentation, undue influence or mutual mistake.' " *See id.* (quoting N.C. Gen. Stat. § 97-17 (1972)). Therefore, plaintiff remains bound by the agreement and, due to her conduct, has waived any right to challenge the compensation received thereunder. Nevertheless, because plaintiff raises an issue of first impression, we exercise our discretion pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure and consider the merits of plaintiff's argument. *See* N.C.R. App. P. 2 (permitting this Court, on its own initiative, to suspend requirements or provisions of Appellate Rules). Thus, we turn to the issue presented, which involves the interpretation of section 97-29 of the General Statutes.

[2] It is well recognized that the goal of statutory construction is to give effect to the intent of the Legislature, *Austin v. Continental General Tire*, 141 N.C. App. 397, 540 S.E.2d 824 (2000), and to this end, the courts must refer primarily to the language of the enactment itself. *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 306 S.E.2d 435 (1983). A statute that " *'is free from ambiguity, explicit in terms and plain of meaning'* " must be enforced as written, without resort to judicial construction. *Andrews v. Nu-Woods, Inc.*, 299 N.C. 723, 726, 264 S.E.2d 99, 101 (1980) (alteration in original) (quoting *School Commissioners v. Alderman*, 158 N.C. 191, 196, 73 S.E. 905, 907 (1912)). " '[S]ignificance and effect should, if possible, . . . be accorded every part of the act, including every section, paragraph, sentence or clause, phrase, and word.' " *Hall v. Simmons*, 329 N.C. 779, 784, 407 S.E.2d 816, 818 (1991) (quoting *State v. Williams*, 286 N.C. 422, 432, 212 S.E.2d 113, 120 (1975)).

In pertinent part, section 97-29 of the General Statutes provides as follows:

> Except as hereinafter otherwise provided, where the incapacity for work resulting from the injury is total, the employer shall pay or cause to be paid, as hereinafter provided, to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his

average weekly wages, but not more than the amount established annually to be effective October 1 as provided herein, nor less than thirty dollars ($30.00) per week.

In cases of total and permanent disability, compensation, including medical compensation, shall be paid for by the employer during the lifetime of the injured employee. . . .

. . . .

Notwithstanding any other provision of this Article, on July 1 of each year, a maximum weekly benefit amount shall be computed. The amount of this maximum weekly benefit shall be derived by obtaining the average weekly insured wage in accordance with G.S. 96-8(22), by multiplying such average weekly insured wage by 1.10, and by rounding such figure to its nearest multiple of two dollars ($2.00), and this said maximum weekly benefit shall be applicable to all injuries and claims arising on and after January 1 following such computation. Such maximum weekly benefit shall apply to all provisions of this Chapter and shall be adjusted July 1 and effective January 1 of each year as herein provided.

N.C. Gen. Stat. § 97-29 (1999). The "average weekly insured wage" used to compute the maximum weekly benefit is:

the quotient obtained by dividing the total of the wages, as defined in G.S. 96-8(12) and (13), reported by all insured employers by the monthly average in insured employment under this Chapter during the immediately preceding calender year and further dividing the quotient obtained by 52 to obtain a weekly rate. (For this computation the data as released annually in the Employment Security Commission's publication "North Carolina Insured Employment and Wage Payment" shall be used.) The quotient thus obtained shall be· deemed to be the average weekly wage for such year.

N.C. Gen. Stat. § 96-8(22) (1999).

Plaintiff argues that an ambiguity exists concerning the clause of section 97-29 stating that "said maximum weekly benefit shall be applicable to all injuries and claims arising on and after January 1 following such computation." N.C. Gen. Stat. § 97-29. Plaintiff concedes that the language could naturally be read to mean that "all claims arising on or after January 1 will be limited by the maximum rate

effective for that year." Plaintiff, nonetheless, offers the following as a reasonable alternate construction:

> [T]he limiting clause should be read as an attempt [by the legislature] to dispel any confusion that cases arising on or after July 1 do not obtain the benefit of the new rate calculated as of that date. Instead, the date of application of the new rate, though "adjusted" on July 1, is January 1 of the subsequent year.

When determining the meaning of a provision, however, the courts assume "that the legislature inserted every part of a provision for a purpose and that no part is redundant." *Hall*, 329 N.C. at 784, 407 S.E.2d at 818. Plaintiff's latter interpretation of the limiting language departs from this presumption, in that the legislature inserted the following provision, effectively disposing of any confusion regarding the effective date of the new rate: "Such maximum weekly benefit shall apply to all provisions of this Chapter and shall be adjusted July 1 and effective January 1 of each year as herein provided." N.C. Gen. Stat. § 97-29. Accordingly, we reject plaintiff's argument that the limiting language of section 97-29 is ambiguous. Instead, we conclude that section 97-29 is clear and explicit on its face, compelling its enforcement as written. *See Nu-Woods*, 299 N.C. at 726, 264 S.E.2d at 101.

As previously noted, section 97-29 expressly limits application of the newly derived maximum weekly benefit "to all injuries and claims *arising on and after January 1 following such computation.*" *Id.* (emphasis added). Our courts have said that " '[n]othing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning.' " *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) (quoting *In re McLean Trucking Co.*, 281 N.C. 242, 252, 188 S.E.2d 452, 458 (1972)). Absent a contextual definition, the courts may infer the ordinary meaning of a word from its dictionary definition. *Id.*

In view of the dictionary definitions of "arise," we understand the term "arising," as it is used in the limiting clause of section 97-29, to mean "originating," "resulting," or "proceeding." *See Black's Law Dictionary* 102-03 (7th ed. 1999); *The American Heritage Dictionary* 45 (3rd ed. 1994). In the instant case, plaintiff sustained the compensable injury on 16 April 1993; thus, both her injury and her workers' compensation claim originated or arose after 1 January 1993. Consequently, the maximum weekly benefit calculated 1 July 1992, which amount became effective 1 January 1993, is the rate applicable to plaintiff's claim. Moreover, under the express language

of the statute, the maximum benefit calculated 1 July 1993 to take effect 1 January 1994 does not apply to plaintiff's claim, since the claim did not originate or arise on or after 1 January 1994.

Plaintiff, however, would have us rewrite the statute to provide that the maximum weekly benefit calculated 1 July "shall be applicable to all injuries and claims *existing* and arising on and after January 1 following such computation." This we cannot and will not do. Accordingly, we hold that pursuant to the terms of section 97-29 of the General Statutes, plaintiff is not entitled to yearly increases commensurate with the maximum rate calculated *per annum*. Hence, the Commission was correct in concluding that "[p]laintiff [was] entitled to weekly compensation at the maximum compensation rate for the year 1993 at the rate of $442.00 and continuing for the remainder of her life."

[3] Nevertheless, plaintiff maintains that section 97-29 as applied violates the Due Process and Equal Protection Clauses of the United States and North Carolina Constitutions. Plaintiff asserts that failing to adjust a disabled employee's compensation rate to equal the maximum weekly benefit computed annually infringes on what she describes as one's fundamental right to "enjoy[] the fruits of one's labor." Plaintiff additionally contends that the practice of fixing a claimant's maximum compensation rate based on the year of injury treats workers injured in later years more favorably than those injured in earlier years.

We initially point out that plaintiff's argument is flawed, insofar as it is based on the premise that the maximum weekly benefit will invariably increase every year. Generally speaking, the trend has been for the rate to increase from year to year. However, in a failing economy, the average weekly wage would likely drop, and so too would the maximum weekly benefit calculated under section 97-29.

As to the constitutionality of section 97-29, we note that the United States Supreme Court developed a two-tiered test for determining whether a statute violates substantive due process:

[I]f the right infringed upon is a "fundamental" right, then the law will be viewed with strict scrutiny and the party seeking to apply the law must demonstrate a compelling state interest for the law to survive a constitutional attack; if the right infringed upon is not a fundamental right, then the party applying the law need

only demonstrate that the statute is rationally related to a legitimate state interest.

*Dixon v. Peters*, 63 N.C. App. 592, 598, 306 S.E.2d 477, 481 (1983). A similar test is employed where the statute is challenged as violating the Equal Protection Clauses of the state and federal constitutions:

> [A] statute is subjected to the highest level of review, or "strict scrutiny," "only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." For a statute to survive this level of constitutional review, the government must demonstrate that the classification created by the statute is "necessary to promote a compelling government interest."

> Where a statutory classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the government need only show the classification in the challenged statute has some rational basis. A statutory classification survives this analysis if it bears "some rational relationship to a conceivable legitimate interest of government." Statutes subjected to this level of scrutiny come before the Court with a presumption of validity."

*In re Assessment of Taxes Against Village Publishing Corp.*, 312 N.C. 211, 221, 322 S.E.2d 155, 162 (1984) (citations omitted). To prevail against reasonable scrutiny, the legislation at issue " 'need not be the best resolution of a particular problem.' " *American Nat'l Ins. Co. v. Ingram*, 63 N.C. App. 38, 47, 303 S.E.2d 649, 654 (1983) (quoting *Prudential Property and Casualty Co. v. Ins. Commission, et al.*, 534 F. Supp. 571, 576 (C.D.S.C. 1982), *aff'd*, 699 F.2d 690 (4th Cir. 1983)). Even if the legislation is "seriously flawed and result[s] in substantial inequality," it will be upheld if it is reasonably related to a permissible state objective. *Id.* (quoting *Prudential*, 534 F. Supp. at 576).

The statute at issue here, section 97-29 of the General Statutes, neither burdens a suspect class, nor affects a fundamental right. It is a purely economic regulation. As such, the provision need only satisfy the rational basis level of scrutiny to withstand both the due process and equal protection challenges.

Per our earlier discussion, under section 97-29, the maximum weekly benefit is computed 1 July and is applied to all injuries and

claims arising on or after 1 January of the following year. We conclude that limiting applicability of the maximum rate based on the year of injury enables insurance providers to project future exposure and calculate premiums accordingly. As defendants persuasively argue,

> Because [the maximum weekly benefit] is tied to the economic condition of the workers in this State, it is difficult to predict what the maximum compensation rate will be in [future years]. . . . The current system allows carriers and employers to assess their worse [sic] case scenario for the coming year in July of the current year.

Thus, the application of section 97-29 appears to bear a rational relationship to a legitimate state interest. Accordingly, we hold that section 97-29 of the General Statutes is not constitutionally infirm.

[4] Plaintiff further contends that section 97-29 violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (1994). Plaintiff's assignment of error in the record on appeal, however, fails to include any reference to the ADA. *See* N.C.R. App. P. 10(c)(1) (requiring assignments of error in the record on appeal "to state plainly, concisely and without argumentation the legal basis upon which error is assigned.") Therefore, we conclude that this argument is not properly before us and decline to address its merits. Moreover, in light of the preceding analysis concerning the construction of section 97-29, we summarily overrule plaintiff's alternative claim that she is at least entitled to receive the maximum rate as of the date the Commission determined her to be totally disabled.

[5] As a final matter, plaintiff argues that the Commission abused its discretion in denying her motion, pursuant to section 97-25 of the General Statutes, for approval of the additional medical providers and treatment related to her stomach reduction surgery and the resulting complications.

Section 97-25 of the General Statutes pertinently provides that:

> In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

> The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

N.C. Gen. Stat. § 97-25 (1999). Whether to authorize supplemental medical treatment under section 97-25 is a matter firmly within the Commission's discretion. *Franklin v. Broyhill Furniture Industries,* 123 N.C. App. 200, 207, 472 S.E.2d 382, 387 (1996). A discretionary ruling will be upheld on appeal, provided that the decision was reasonable and was not whimsical or ill-considered. *Carrier v. Starnes,* 120 N.C. App. 513, 520, 463 S.E.2d 393, 397 (1995).

In the present case, the Commission denied authorization of the medical treatment related to plaintiff's stomach reduction procedure without stating any reason for its ruling. Absent findings of fact or some other clear indication of the basis upon which the Commission denied the request, we cannot determine whether the decision was an appropriate exercise of the Commission's discretion. Therefore, we reverse the order denying plaintiff's motion under section 97-25 of the General Statutes and remand this matter for entry of an order setting forth findings of fact revealing the basis of the Commission's ruling.

In sum, the opinion and award of the North Carolina Industrial Commission is affirmed in part, reversed in part, and remanded for further appropriate action.

Affirmed in part, reversed in part, and remanded.

Judges MARTIN and THOMAS concur.