LOLITTA HUNT CAPLE, AND HUSBAND, LUTHER R. CAPLE, JR., PLAINTIFFS V. BULLARD RESTAURANTS, INC., D/B/A BURGER KING, TAR HEEL, INC. D/B/A BURGER KING, CLIFFORD BULLARD, JR., AND WAYNE FIELDS, DEFENDANTS

No. COA01-906

(Filed 20 August 2002)

**Workers' Compensation— exclusivity—injury arising from employment—restaurant manager robbed and beaten**

Plaintiff's claims are barred by the exclusivity provisions of the Workers' Compensation Act where plaintiff worked as a restaurant night manager, suffered post traumatic stress syndrome after being beaten and robbed by a co-employee, and brought a civil action based on defendant's alleged failure to investigate the co-employee's background before hiring him. Contrary to plaintiff's contention, a binding Form 21 agreement acknowledged that the injury did arise from plaintiff's employment. Moreover, plaintiff's action was not allowed under *Woodson v. Rowland*, 329 N.C. 330 (1991), and while plaintiff contended that being attacked by a co-employee was not an expected incident of her employment, robbery is a general risk of counting money at a business at closing time.

Appeal by plaintiffs from judgment entered 29 January 2001 by Judge D. Jack Hooks, Jr., in Scotland County Superior Court. Heard in the Court of Appeals 24 April 2002.

*Puryear and Lingle, P.L.L.C., by David B. Puryear, Jr.; and Hayes Hofler & Associates, P.A., by R. Hayes Hofler, for plaintiff appellants.*

*Moreau, Marks & Gavigan, PLLC, by W. Timothy Moreau; Etheridge, Moser, Garner & Bruner, by Terry R. Garner; and Cranfill, Sumner & Hartzog, L.L.P., by Samuel H. Poole, Jr., for defendant appellees.*

McCULLOUGH, Judge.

Plaintiffs Lolitta Hunt Caple and Luther R. Caple, Jr., appeal from an order granting summary judgment in favor of defendants Bullard Restaurants, Inc., d/b/a Burger King, Tar Heel, Inc., d/b/a Burger King and Clifford Bullard, Jr., entered 29 January 2001 by the Honorable D. Jack Hooks, Jr., during the 27 November 2000 Civil Session of Scotland County Superior Court.

Plaintiff Lolitta Caple was the assistant manager of defendant Tar Heel, Inc.'s Burger King restaurant in Hamlet, North Carolina. On 14 May 1998, she was assigned by her supervisor to work as the night manager at defendant Bullard Restaurants, Inc.'s Laurinburg Burger King restaurant. The two defendant companies had interlocking ownership and management.

Defendant Wayne Fields worked at the Laurinburg restaurant as the night porter on 14 May 1998. The night porter at Burger King, among other things, was to safeguard fellow employees when the restaurant closed at night by making sure they left safely. When Fields was hired by defendant Bullard Restaurants, Inc., he indicated on his application that he had not been convicted, pled guilty, or pled no contest to any felony or misdemeanor other than a traffic violation in the past five years. Defendants did not perform a criminal record check, or for that matter verify anything else from Fields' application. Fields had in fact been convicted of several crimes within the previous five years, including breaking and entering, assault on a female, communicating threats, and injury to real property. Defendant Fields had also been convicted of second-degree murder in 1986.

Mrs. Caple's duties as night manager were to run the shift, do inventory, transfer the money from the registers to the safe after counting it, and make sure that all was ready for the morning shift. The night manager was not to leave the restaurant until the night porter arrived.

Fields arrived at the restaurant on 14 May 1998 after plaintiff had finished counting the money and putting it in the safe. After the last of the employees left, plaintiff and Fields were the only ones still in the restaurant. Fields then assaulted her from behind with a pipe wrench. He demanded that she open the safe. When she could not, he threatened to kill her. Then, he tied her up and attempted to open the safe. Fields ended up stealing the safe instead of getting it open. Plaintiff eventually escaped and was found by police in the area. Fields was apprehended and convicted of robbery, assault, and various other crimes arising out of the incident.

Mrs. Caple signed a Form 21 Agreement for Workers' Compensation Benefits on 25 May 1998. This form represents the agreement between Mrs. Caple and Bullard's workers' compensation carrier that she "sustained an injury by accident . . . arising out of and in the course of employment on or by May 14, 1998." The injuries resulting from the assault by Fields were listed as to her "wrist, ankle,

and scapular contusion, psychological." Mrs. Caple has received workers' compensation payments beginning in May of 1998 to the present, as well as payment for all of her medical bills as required under the act.

Nevertheless, Mrs. Caple filed this civil suit against defendants on 22 October 1998. The complaint alleges that Mrs. Caple suffers from "severe post traumatic stress syndrome and depression. She is unable to eat, sleep, work, relax, leave her home, or function at any reasonable level." The complaint asserts several theories of recovery, including negligence as to Bullard Restaurants and Clifford Bullard's hiring of Fields, negligent infliction of emotional distress, intentional infliction of emotional distress as to Bullard Restaurants, Clifford Bullard, and Fields; breach of contract as to Bullard Restaurants, Inc., Tar Heel, Inc., assault and battery and false imprisonment as to Fields, and a loss of consortium claim by her husband. In her negligence claim, she alleges that she "continues to suffer decreased earning capacity[.]" The crux of the complaint was that there was no investigation into Fields' application before he was hired to assist in the protection of his fellow employees.

Defendants Bullard Restaurants, Inc., Tar Heel, Inc., and Clifford Bullard, Jr., made their motion for summary judgment on 8 May 2000. Evidence from discovery tended to show that during the three weeks that Fields worked before the assault and robbery, he did nothing to alert anyone as to his violent tendencies, or that he was a safety risk. The evidence also showed that the hiring practices used with Fields were the practices used in hiring all other employees. Bullard Restaurants had no actual knowledge of Fields' criminal history, and no indication of it through his conduct at work. However, evidence for plaintiff revealed that Fields' application showed unusual gaps for a 41-year-old man and that defendants violated its own practices as well as industry practices in failing to verify any information in the Fields application. Had they checked with Fields' last employer, they would have found that he had been fired and became violent. That would have mandated a criminal record check.

After a hearing, Judge Hooks found that there was no genuine issue as to any material fact and granted summary judgment to defendants, except for Fields, who had a default judgment entered against him. Plaintiffs appeal from this order.

The plaintiffs' sole assignment of error is that the trial court erred in granting defendant's motion for summary judgment.

CAPLE v. BULLARD RESTAURANTS, INC.

[152 N.C. App. 421 (2002)]

I.

The main issue at the trial court and on appeal is whether the claims are barred by the exclusivity provisions of the Workers' Compensation Act which turns on whether the injuries suffered by plaintiff are covered by the Workers' Compensation Act.

N.C. Gen. Stat. § 97-10.1 states that:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents . . . shall exclude all other rights and remedies of the employee, his dependents . . . as against the employer at common law or otherwise on account of such injury or death.

N.C. Gen. Stat. § 97-10.1 (2001). "In order for an injury to be compensable under the Workers' Compensation Act, a claimant must prove: '(1) [t]hat the injury was caused by an accident; (2) that the injury arose out of the employment; and (3) that the injury was sustained in the course of employment.' " *Wake County Hosp. Sys. v. Safety Nat. Casualty Corp.*, 127 N.C. App. 33, 38, 487 S.E.2d 789, 792, *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997) (quoting *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)).

Plaintiffs' main contention is that the emotional injuries suffered by her as a result of the assault by her co-employee did not arise out of her employment and thus are not covered under the Workers' Compensation Act.

Initially, we note that there is significance to the fact that plaintiff and defendants' workers' compensation carrier signed a Form 21 Agreement for Workers' Compensation Benefits months in advance of filing her civil suit. The Commission approved the agreement on 22 December 1999. At this point, the agreement became binding on the parties and assumed the force and effect of a ruling by the Industrial Commission. *See Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 542 S.E.2d 668, *disc. review denied*, 353 N.C. 450, 548 S.E.2d 524 (2001); *Pruitt v. Publishing Co.*, 289 N.C. 254, 221 S.E.2d 355 (1976); N.C. Gen. Stat. § 97-17 (2001). These cases stand for the proposition that, once approved, a Form 21 "becomes an award enforceable, if necessary, by a court decree." *Pruitt*, 289 N.C. at 258, 221 S.E.2d at 358.

**CAPLE v. BULLARD RESTAURANTS, INC.**

[152 N.C. App. 421 (2002)]

In *Clark*, an employee was contesting as incorrect the rate agreed to in the Form 21 Agreement that she had signed and the Industrial Commission had approved. The *Clark* Court noted that the employee had not properly preserved the right to challenge her rate of compensation. In so holding, this Court said that once a Form 21 Agreement is approved, "neither party was in a position to challenge any provision of the agreement, 'unless it [was] made to appear to the satisfaction of the Commission 'that there [had] been error due to fraud, misrepresentation, undue influence or mutual mistake.' ' " *Clark*, 142 N.C. App. at 353, 542 S.E.2d at 671 (quoting *Pruitt*, 289 N.C. at 259, 221 S.E.2d at 358) (quoting *Neal v. Clary*, 259 N.C. 163, 130 S.E.2d 39 (1963)). In addition, the claimant in *Clark* had collected the compensation for almost a year before she requested a hearing on her request for yearly increases in compensation. The employee in *Clark* therefore remained "bound by the agreement and, due to her conduct, . . . waived any right to challenge the compensation received thereunder." *Id.* at 354, 542 S.E.2d at 671.

The Form 21 Agreement approved in the present case acknowledges that the injury suffered by Mrs. Caple was a compensable injury, in that it was an "injury by accident . . . *arising out of* and in the course of employment on or by May 14, 1998." (Emphasis added.) Plaintiff began receiving compensation in May of 1998 and has continued to do so up to the present. Plaintiff did not dispute the provisions of her agreement until around five months later when she filed her civil complaint. At no time has Mrs. Caple sought to have the Form 21 Agreement set aside for any of the reasons enumerated in § 97-17 (*i.e.*, fraud or misrepresentation). Therefore, Mrs. Caple is bound by her agreement in which it was stated that the injury arose out of the employment.

Plaintiff argues that *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991) allows her to pursue this civil action. We disagree. The Supreme Court in *Woodson* concluded that the plaintiff could simultaneously pursue a civil action against her employer and her workers' compensation claim "without being required to elect between them," although she was entitled to only one recovery. *Woodson*, 329 N.C. at 337, 407 S.E.2d at 226. This was so because her forecast of evidence tended to show that the death of the decedent "was the result of both an 'accident' under the [Workers' Compensation Act] and an intentional tort," and the exclusivity provisions do not "shield the employer from civil liability for an intentional tort." *Id.*

CAPLE v. BULLARD RESTAURANTS, INC.

[152 N.C. App. 421 (2002)]

We hold that when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act. Because . . . the injury or death caused by such misconduct is nonetheless the result of an accident under the Act, workers' compensation claims may also be pursued. There may, however, only be one recovery.

*Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228.

In *Woodson*, a workers' compensation claim had been filed, yet it had not been ruled upon because the claimant had "specifically requested that the Industrial Commission not hear her case until completion of [her civil action]." *Woodson*, 329 N.C. at 336, 407 S.E.2d at 226. It is not clear from *Woodson* that a claimant would be allowed to file a Form 21 Agreement with the Industrial Commission and begin to receive compensation, while still being entitled to file a civil action for the same injury. What is clear is that only one recovery may be had, and in the present case, plaintiff has been receiving benefits.

Plaintiff correctly points out that receiving benefits does not bar a suit by the employee for claims which rightfully fall outside the scope of the Workers' Compensation Act. Thus, we discuss whether that is the case here.

As to the applicability of the Workers' Compensation Act to the present facts, plaintiff asserts that her work as an assistant manager of the restaurant did not create a risk that she would be attacked by a co-employee as an expected incident of her employment. We believe that *Wake County Hosp. Sys.*, 127 N.C. App. 33, 487 S.E.2d 789, controls the outcome here. That case states:

In North Carolina, courts have consistently held that an intentional assault in the work place by a fellow employee or third party is an accident that occurs in the course of employment, but does not arise out of the employment unless a job-related motivation or some other causal relation between the job and the assault exists.

*Id.* at 39, 487 S.E.2d at 792. In *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 532-33, our Supreme Court discussed this causal relation:

CAPLE v. BULLARD RESTAURANTS, INC.

[152 N.C. App. 421 (2002)]

[T]he controlling test of whether an injury "arises out of" the employment is whether the injury is a natural and probable consequence of the nature of the employment. A contributing proximate cause of the injury must be a risk to which the employee is exposed because of the nature of the employment. This risk must be such that it "might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. The test 'excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. . . .' " In other words, the " 'causative danger must be peculiar to the work and not common to the neighborhood. . . .' "

*Id.* (citations omitted).

The causal relationship in the *Wake County Hosp. Sys.* case was supported by the facts that the employee was "abducted from the employee parking lot, she was assaulted and killed on an adjacent street, she was carrying work materials, and the assailant was a co-employee." *Wake County Hosp. Sys.*, 127 N.C. App. at 39, 487 S.E.2d at 792. Relying on *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 377 S.E.2d 777, *aff'd*, 325 N.C. 702, 386 S.E.2d 174 (1989), which stated that "course of employment" included the employer's premises and may extend to adjacent premises or roads, this Court in *Wake County Hosp. Sys.* found that the facts were sufficient to show a causal relationship between the employee's employment and her death, and thus would be compensable under the Workers' Compensation Act. *Wake County Hosp. Sys.*, 127 N.C. App. at 39-40, 487 S.E.2d at 792-93.

Regardless, the claimant in that case made the argument that the employee could still maintain a civil action for negligent hiring and retention against the hospital. *Id.* at 40, 487 S.E.2d at 793. This Court noted that the remedies afforded by the act were exclusive per N.C. Gen. Stat. § 97-10.1, precluding claims for ordinary or willful and wanton negligence, but that there was an exception under the *Woodson* case for injuries that were the result of intentional conduct which the employer knew was substantially certain to cause serious injury or death. The Court stated, "[e]mployees have not been permitted to recover damages from an employer in a *Woodson* claim for injury or death resulting from negligent hiring or retention." *Id.* The Court continued:

CAPLE v. BULLARD RESTAURANTS, INC.

[152 N.C. App. 421 (2002)]

Here, the only allegations contained in the complaint . . . that could possibly be construed as asserting a *Woodson* claim were that the Hospital hired a laundry employee with a relatively minor criminal record, and failed to fire that employee even though it had knowledge that he had engaged in sexual relations with other hospital employees at work, knew he had a violent temper, and had knowledge of his alleged but unproven altercations with female co-employees in which no one was injured. Though these allegations may be sufficient to allege that the Hospital was negligent in hiring and retaining [assailant], the allegations are insufficient to allege conduct on the part of the Hospital substantially certain to cause injury or death and, therefore, do not meet the stringent requirements of *Woodson*. Without a *Woodson* claim, workers' compensation is the only remedy available in this case; any other action is barred as a matter of law.

*Wake County Hosp. Sys.*, 127 N.C. App. at 40-41, 487 S.E.2d at 793.

The facts in the present case clearly fall within the realm of the *Wake County Hosp. Sys.* Indeed, they fit it much better. Contrary to plaintiffs' contention, the facts show that the injury to Mrs. Caple arose out of her employment because of the causal relation between her job and the assaultive conduct. She was the night manager. Her duties as such were, among others, to take the money out of the registers, count it, and then put it into the safe. Usually most of the employees would be gone at this time, save the night porter. It is certain that getting robbed was a risk that " 'might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service[.]' " *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 532-33.

Her allegations also fail to support a *Woodson* claim. She alleges that defendants failed to investigate Fields' application, and as a result he assaulted her during the robbery causing her severe emotional distress. As in *Wake County Hosp. Sys.*, such conduct, at best, only shows that defendants were negligent in hiring and retaining Fields. It would still be insufficient to allege "conduct on the part of [defendants] substantially certain to cause injury or death and, therefore, [does] not meet the stringent requirements of *Woodson*." *Wake County Hosp. Sys.*, 127 N.C. App. at 41, 487 S.E.2d at 793. Defendants had no indication during the three weeks of Fields' employment that he would commit such a crime. *See Stanley v. Brooks*, 112 N.C. App. 609, 436 S.E.2d 272 (1993), *disc. review denied*, 335 N.C. 772, 442 S.E.2d 521 (1994) (Employers generally have no duty to perform

criminal record checks and a presumption exists that an employer uses due care in hiring its employees.).

Plaintiffs next argue that *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140-41 (1986), stands for the proposition that negligent hiring by an employer resulting in emotional injury is not covered under the Workers' Compensation Act and thus dictates a different result in the case *sub judice*. In that case this Court stated:

> Although the Act eliminated negligence as a basis of recovery against an employer, the Act covers only those injuries which arise out of and in the course of employment. An injury arises out of the employment "when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment."
>
> The emotional injury allegedly suffered by [plaintiff], resulting from [co-employee's] sexual harassment, [was not] a "natural and probable consequence or incident of the employment."

*Hogan*, 79 N.C. App. at 496, 340 S.E.2d at 124.

Plaintiffs rely on *Hogan* for the proposition that negligent hiring by an employer resulting in emotional injury is not covered under the Act. While emotional damage might not be a natural or probable consequence of working at a fast food restaurant, robbery is a risk that is incidental to the service of a night manager who counts money before placing it in a safe. The night porter was hired to attempt to reduce just such a risk. The act does cover emotional distress if it is a natural consequence of the job, as in the case of a police officer suffering from depression or post-traumatic stress disorder from the rigors of his job. *See Pulley v. City of Durham*, 121 N.C. App. 688, 468 S.E.2d 506 (1996). Further, in *Jordan v. Central Piedmont College*, 124 N.C. App. 112, 476 S.E.2d 410 (1996), *disc. review denied*, 345 N.C. 753, 485 S.E.2d 53 (1997), this Court held that mental injuries *are compensable* under the Workers' Compensation Act, the same as physical injuries so long as the injury meets the statutory requirements. *Jordan*, 124 N.C. App. at 118-19, 476 S.E.2d at 413-14.

Plaintiffs' argument perverts the natural consequence/causal relation requirement of the "arising out of the employment" test. *Hogan* held that "[s]exual harassment is not a risk to which an employee is exposed because of the nature of the employment but is a risk to

which the employee could be equally exposed outside the employment." *Hogan*, 79 N.C. App. at 496, 340 S.E.2d at 124. Basically, no one takes a job expecting to be sexually harassed. However, robbery is a general risk when you count money at a business at closing time.

For the reasons set forth above, the ruling of the trial court is

Affirmed.

Judges TIMMONS-GOODSON and BIGGS concur.