***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Homick with minor modifications.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The alleged date of injury is July 22, 2008.
2. As of July 22, 2008, an employer-employee relationship existed between the parties, and the Defendants are subject to the Act.
3. As of July 22, 2008, the Employer-Defendant was insured by Carolina Casualty Insurance Company, a Berkley Net Underwriters Company.
4. The parties hereby stipulate and agree that all Industrial Commission forms and pleadings are genuine and may be received into evidence.
5. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-trial Agreement;
 • Exhibit 2: Plaintiff's Medical Records (pages 1-376 and a total of 1,285 pages from Mission Hospital, submitted on a CD); and
 • Exhibit 3: Industrial Commission Form 22 Statement of Days Worked and Earnings and ADP Earnings Statement.
In addition, the following exhibits were introduced and received into evidence:
 • Defendants' Exhibit 1: December 13, 2000 Decision of the U.S. Court of Appeals for the Fourth Circuit;
 • Defendants' Exhibit 2: Plaintiff's Responses to Defendants' First Set of Interrogatories and Request for Production of Documents; *Page 3 
 • (Defendants' Exhibit 3, an unsigned Industrial Commission Form 18 Notice of Accident to Employer was not introduced into evidence.)
 • Defendants' Exhibit 4: Industrial Commission Form 18 Notice of Accident to Employer
dated October 22, 2008 (signed);
 • Defendants' Exhibit 5: Plaintiff's Amendment to Paragraph 2 of Plaintiff's Discovery Responses; and
 • Defendants' Exhibit 6: August 12, 2008 e-mail.
6. The issues for determination are as follows:
 a. Whether the incidents which occurred at plaintiff's work place on July 22, 2008 was the catalyst which caused the plaintiff to become so over-stressed as to suffer physical damage, and whether his employment placed him at a greater risk for contracting his condition than the general public.
 b. What are plaintiff's rights to indemnity payments from defendants so long as necessary, as well as all other payments associated therewith.
 c. What are plaintiff's rights to ongoing medical care at the expense of the defendants until such time as is required to effect a cure or give relief and such additional time as, in the judgment of the Commission, tends to lessen the period of disability.
 d. What is the correct amount of plaintiff's gross average weekly wage and the correct compensation rate.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-two years old. Plaintiff graduated from high school and subsequently completed continuing education classes in the area of transportation.
2. Plaintiff commenced work for defendant-employer in approximately 1985 as a bus operator and remained in this position for approximately eight years. In 1993, plaintiff was promoted to the position of Operations Supervisor. As an Operations Supervisor, plaintiff's job responsibilities included oversight of transit operations and dispatchers, employee training, safety issues, bus route scheduling and accident investigation. Plaintiff testified that he typically worked twelve to sixteen hours a day and had done so for several years. When necessary, plaintiff also worked additional hours for emergencies, accidents, and inclement weather.
3. On July 1, 2008, there was a change in general managers and as a result, some individuals also resigned. The new General Manager requested plaintiff's assistance with the bus scheduling for the Bele Chere Festival in Asheville, which was an assignment not previously performed by plaintiff.
4. On July 22, 2008, plaintiff testified that he was faced with a number of issues, which he found to be very stressful. In addition to the recent management change and the additional responsibility for the Bele Chere Festival, plaintiff faced a deadline to complete an investigation report and had to address the concerns of two dispatchers threatening to resign. On that same day, an employee provided plaintiff with information regarding a sexual harassment claim from over twelve years ago against defendant-employer's new General Manager and questioned plaintiff about his response to that information. *Page 5 
5. Plaintiff began to experience chest pain that day, and his wife took him to the Emergency Room at Mission Hospital. Plaintiff presented with shortness of breath, severe hypertension and chest pains.
6. After being treated and released from Mission Hospital, plaintiff presented in early August 2008 to Dr. Craig Mills, an internist, who had treated plaintiff for approximately ten years. Dr. Mills altered plaintiff's blood pressure medications and released plaintiff from work.
7. Dr. Mills opined that plaintiff's anxiety was a condition with which plaintiff had suffered for quite a number of years prior to July 22, 2008. Although Dr. Mills noted that plaintiff's blood pressure readings were higher after July 2008, he admitted that the higher readings could have been the natural progression of plaintiff's hypertensive disorder. Dr. Mills did not identify any specific factors unique to plaintiff's job that led to the development of plaintiff's psychological and hypertension symptoms.
8. On August 28, 2008, Lisa McQueen, a home health social worker with Care Partners Home Health met with plaintiff at Dr. Mills' request. Ms. McQueen requested a psychological evaluation for both plaintiff and his disabled wife. Plaintiff and his wife thereafter began a series of joint consultations with Susan Bird, a psychologist with All Souls Counseling Center.
9. Plaintiff explained the causes of his stress during a September 25, 2008, appointment with Ms. McQueen. During this appointment, plaintiff discussed family and financial stressors, including issues with his wife, brother, mother, and daughter as well as stress at work. Plaintiff explained that he felt "trapped" most of his life with commitments to his family and work. *Page 6 
10. Upon referral from Dr. Mills, plaintiff presented to Douglas Spires, a home health field nurse at Care Partners Home Health in October of 2008. Plaintiff reported ongoing treatment for atypical hypertension, which he had experienced since his teenage years. Plaintiff's primary complaints at that time were anxiety and panic attacks, which had worsened during the preceding month. Plaintiff shared with Mr. Spires a history of multiple past stressors.
11. Throughout the remainder of 2008, plaintiff continued treatment with Dr. Mills and his cardiologist, Dr. William Hathaway. Plaintiff was hospitalized on several occasions for syncopal, hypotensive, and hypertensive episodes.
12. In December of 2008, Dr. Mills opined that plaintiff had a combination of anxiety and probable history of a cerebral vascular accident (CVA), although a recent MRI did not support such a finding.
13. In 2009, plaintiff was again hospitalized on several occasions for hypotensive and hypertensive spells; however, the etiology of plaintiff's condition was not ascertained.
14. On August 17, 2009, plaintiff presented to Dr. Terence E. Fitzgerald, a clinical psychologist for an independent psychological evaluation/risk factor screen. Dr. Fitzgerald is board certified in clinical and health psychology. Dr. Fitzgerald's initial impressions were that plaintiff had a generalized anxiety disorder, by history, with panic attacks; a history of chronic nicotine dependence of over 35 years; chronic, atypical/labile hypertension dating to adolescence; and syncope (sudden loss of consciousness) secondary to orthostatic hypotension.
15. Dr. Fitzgerald concluded, based on the clinical interview, cross-validated psychometric testing, and a review of plaintiff's medical records, that plaintiff's anxiety and depressive conditions were chronic and preexisting and could not, within reasonable scientific probability, be causally linked to the occurrences on July 22, 2008. Further, Dr. Fitzgerald *Page 7 
opined to a reasonable degree of medical certainty that there was no evidence-based data to suggest a causal link between the stressful events plaintiff experienced on July 22, 2008 and plaintiff's cardiac condition. Dr. Fitzgerald opined that plaintiff had a cerebrovascular condition that is chronic and preexisting. Dr. Fitzgerald further opined that there was little scientific evidence that plaintiff suffered an actual stroke (CVA).
16. On September 23, 2009, plaintiff presented to Dr. Anthony Sciara, a licensed psychologist, for an evaluation. Dr. Sciara noted that for many years plaintiff had experienced a consistent and supportive environment in which to work and was now feeling unsupported and in an environment that he felt was unpredictable and threatening to his continued employment.
17. Dr. Sciara opined that the addition of new job responsibilities and the recent changes that plaintiff experienced could or might be sufficient to cause the type of hypertensive episode plaintiff experienced on July 22, 2008.
18. Dr. Sciara admitted that employees in a variety of different occupations work long hours, have unexpected changes, problems and deadlines and that these events are not exclusive to plaintiff's job with defendant-employer. Dr. Sciara did not identify specific factors unique to plaintiff's job that led to the development of plaintiff's psychological problems and hypertension. The Full Commission finds the opinions elicited from Dr. Sciara to be insufficient to establish causation.
19. Based upon the totality of the evidence and testimony elicited from the doctors, the Full Commission gives greater weight to the opinion of Dr. Fitzgerald and finds that plaintiff's working conditions with defendant-employer did not place him at a greater risk for contracting depression, anxiety and hypertension than the general public. The evidence indicates that the job stressors plaintiff experienced at work can and do occur in other professions or *Page 8 
industries. Plaintiff's working conditions, which precipitated plaintiff's increased level of stress are not characteristic of, and peculiar to, his position as Operations Supervisor.
20. As noted in the medical records, plaintiff has a long history of treatment for labile hypertension. Prior to July 22, 2008, plaintiff experienced for several months increasing dyspnea, or shortness of breath, on exertion. Moreover, for several years prior to his alleged work-injury, plaintiff sought extensive medical treatment for blood pressure fluctuations, chest pain, anxiety and depression.
21. The medical records reveal that as far back as November 29, 1998, plaintiff had reported to Mission Hospital with complaints of chest pain. Plaintiff was again treated for chest pain in September 1999, and continued to seek treatment at Mission Hospital for reported chest pain and tightness throughout 2000 and 2001. During that time, plaintiff experienced hypertension.
22. On February 10, 2003, plaintiff presented to the Emergency Room at Mission Hospital with complaints of chest tightness, blurred vision, a severe headache, and a rise in blood pressure over the preceding few weeks. This medical record reveals plaintiff had problems with hypertension since the age of 17 or 18. The admitting physician assessed plaintiff with a hypertensive crisis, associated with chest pain and mild congestive heart failure.
23. On August 11, 2006, plaintiff presented to his primary care physician, Dr. Craig Mills, with Asheville Internal Medicine, complaining of chest tightness, high blood pressure and the feeling of "smothering from time to time."
24. On January 15, 2007, plaintiff returned to Dr. Mills complaining of problems with stress, stress at work, and not sleeping properly. Dr. Mills prescribed Xanax and a new regimen of medications to treat plaintiff's ongoing high blood pressure. *Page 9 
25. The evidence also revealed that plaintiff experienced several significant family stressors unrelated to his employment. These included moving his mother to a nursing home under the care of hospice, difficulties with his daughter and the responsibilities involved in caring for his wife, who is totally disabled, and dependent upon plaintiff for support.
26. The Full Commission finds that temporary or long-term increases in job responsibilities are not limited to employees working as Operations Supervisors, and an employee in any industry can be faced with increased responsibilities. Similarly, changes in management can occur frequently no matter what the profession. Plaintiff was regularly required to complete and submit accident and investigation reports by specific deadlines to Risk Management of Asheville. Likewise, deadlines are a common occurrence in almost every job in the marketplace. Furthermore, sexual harassment occurs and must be dealt with in any workplace setting. Similarly, plaintiff's managerial responsibilities required him to address inevitable turnover issues, including responding to existing employees' resignations and training new individuals to fill those positions. Although plaintiff had never assumed primary responsibility for coordinating the transportation for the Bele Chere Festival in Asheville, it was plaintiff's responsibility to coordinate the general bus scheduling. Accordingly, the Full Commission finds that plaintiff's specific work stressors are not characteristic or peculiar to his employment, and can occur in any industry.
27. The Full Commission finds that plaintiff did work in a stressful atmosphere and that he was a conscientious employee. In addition, the evidence reveals that plaintiff did experience a demanding workload, management changes augmented his stress, and he had anxiety about assuming responsibility for the transportation scheduling for the Bele Chere Festival; however, the evidence is insufficient to demonstrate that these and other workplace *Page 10 
stressors, which may have contributed to his psychological condition, were causes and conditions characteristic of and peculiar to his position as Operations Supervisor. Therefore, plaintiff has failed to prove that his employment placed him at a greater risk of developing his psychological condition and hypertension than the general public.
28. The Full Commission further finds that the greater weight of the evidence indicates that while plaintiff experienced several stressors on July 22, 2008, plaintiff has failed to meet his burden of proving an injury by accident, as plaintiff's work activities on July 22, 2008, fall within what might reasonably be expected during his normal work routine and normal working conditions. Further, plaintiff has not provided sufficient evidence to support a claim for occupational disease.
29. Further, plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work events on July 22, 2008, and the disability for which compensation is sought.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to prove a compensable occupational disease under N.C. Gen. Stat. § 97-53, the occupational disease must be (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged, (2) it must not be an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation, and (3) there must be a causal connection between the disease and the claimant's employment. Rutledge v. Tultex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). The *Page 11 
claimant bears the burden of proving each element of an occupational disease. Norris v. Drexel Heritage Furnishings, Inc.,139 N.C. App. 620, 621, 534 S.E.2d 259, 261 (2000), cert.denied, 353 N.C. 378, 547 S.E.2d 15 (2001).
2. Plaintiff failed to make the requisite showing that his job responsibilities as an Operations Supervisor placed him at a greater risk for contracting depression, hypertension, anxiety and panic disorder than the general public. As the evidence reveals, plaintiff's work conditions and stressors are no different from those experienced by employees in other occupations and work environments. For that reason, plaintiff has not met his burden of proving a compensable occupational disease under N.C. Gen. Stat. § 97-53.
3. In the alternative, in order for an injury to be compensable under the North Carolina Workers' Compensation Act by theory of injury by accident, a claimant has the burden of proving: (1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment. Wake CountyHospital Systems. Inc., v. St. Paul Fire and Marine Ins. Co.,127 N.C. App. 33, 38-39, 487 S.E.2d 789, 792 (1997) (citingGallimore v. Marilyn's Shoes,292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)). Plaintiff has also failed to meet his burden of proving an injury by accident as plaintiff's work activities on July 22, 2008, fall within his normal work routine and normal working conditions.
4. Further, plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work events on July 22, 2008, and the disability for which compensation is sought. Click v. Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980). As a result, plaintiff did not sustain an injury by accident arising out of and in the course of his *Page 12 
employment with defendant on July 22, 2008. N.C. Gen. Stat. § 97-2(6); Anderson v. Northwestern MotorCo., 233 N.C. 372, 64 S.E.2d 265 (1951).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be and is hereby DENIED.
2. Each side shall pay their own costs.
This 27th day of October 2010.
 S/_____________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/________________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________ PAMELA T. YOUNG CHAIR *Page 1