An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.
An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-835

Filed: 5 May 2015

From the North Carolina Industrial Commission, I.C. File No. Y18410

MARY TAYLOR, Employee, Plaintiff,

v.

CAROLINAS HEALTHCARE SYSTEM, Employer, Self-Insured Defendant.

Appeal by plaintiff from Opinion and Award entered 13 May 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 2 December 2014.

*Hardison & Cochran, PLLC, by J. Jackson Hardison, for plaintiff-appellant.*

*Dickie, McCamey & Chilcote, PC, by Susan H. Briggs, for defendant-appellee.*

CALABRIA, Judge.

Mary Taylor ("plaintiff") appeals from an Opinion and Award by the Full Commission of the North Carolina Industrial Commission ("the Commission") concluding that she did not sustain a compensable injury by accident as a result of a specific traumatic incident arising out of and in the course of her employment and denying her claim for worker's compensation benefits. We affirm.

Plaintiff was employed with Carolinas Healthcare System ("defendant") as an Instrument Tech III since May 2006. Plaintiff's job description included lifting and scanning ("pulling") surgical instruments and placing them on carts for scheduled operating room procedures. On 16 February 2012, since one of plaintiff's co-workers was on vacation, plaintiff was handling extra work—both her job and her co-worker's—when she began to experience pain in her wrists and burning in her arms up to her shoulders. Plaintiff reported her pain to the assistant manager, Linda Stalnaker ("Stalnaker").

On 17 February 2012, plaintiff completed a Report of Occupational Injury or Illness, stating that she injured her wrists and upper shoulder while pulling instruments for case carts all day. Plaintiff sought treatment at an urgent care facility on 17 February 2012, and was referred to OrthoCarolina, where she was treated by John Ternes ("Dr. Ternes"), an orthopedic physician. Dr. Ternes noted that plaintiff reported that she lifted a heavy instrument on 16 February 2012, felt a burning sensation in her wrists, and complained of pain in her shoulders, the center of her back, and the back of her neck. According to Dr. Ternes's diagnosis, plaintiff sustained bilateral wrist strains, and was assigned a ten-pound lifting restriction. Dr. Ternes continued treating plaintiff and placed her on light duty. Plaintiff returned to her regular position after approximately six weeks, when Dr. Ternes released her from the weight restriction.

On 19 April 2012, plaintiff sought treatment from Dr. Andrew Sumich ("Dr. Sumich"), a board certified specialist in physical medicine and rehabilitation, at Carolina Neurosurgery & Spine. Plaintiff reported a two month history of neck pain, bilateral upper extremity pain, and numbness in the wrists and hands. Dr. Sumich ordered physical therapy for plaintiff's condition. In June 2012, the results of an MRI indicated that plaintiff sustained a small disc herniation abutting the spinal cord at C4-C5. Plaintiff was diagnosed with left upper extremity radiculopathy and left C5-C6 and C6-C7 foraminal stenosis. Dr. Sumich placed plaintiff on work restrictions and ordered continued physical therapy. Plaintiff continued to see Dr. Sumich periodically for her condition. Dr. Sumich prescribed Gabapentin for pain, and plaintiff continued physical therapy.

Defendant sent plaintiff a letter dated 27 July 2012 documenting plaintiff's work restrictions. The letter also indicated that plaintiff had the opportunity to apply for a replacement job within defendant's system for 90 days, with a deadline of 6 November 2012. Plaintiff applied for several positions with defendant, but did not receive a job offer before the deadline. Her employment with defendant was terminated on 6 November 2012.

Plaintiff filed a claim alleging to have suffered a compensable injury. Defendant denied plaintiff's claim on 25 September 2012, finding that she "did not suffer a compensable injury by accident or an occupational disease as described under

the provisions of the NC Workers' Compensation Act."  Plaintiff requested that her claim be assigned for hearing, seeking workers' compensation from defendant. Deputy Commissioner Bradley W. Houser ("Deputy Commissioner Houser") heard the matter on 16 May 2013.  On 1 October 2013, Deputy Commissioner Houser entered an Opinion and Award finding and concluding that plaintiff did not sustain a compensable injury by accident arising out of or in the course of her employment, and denied her claim for workers' compensation benefits.  Plaintiff appealed to the Full Commission.

On 13 May 2014, the Commission found and concluded that plaintiff "failed to produce evidence of a specific traumatic incident" on 16 February 2012 that caused her injury, "and in the absence of an event, the onset of pain is not a specific traumatic incident."  Since plaintiff did not sustain a compensable injury by accident as a result of a specific traumatic incident which would entitle her to compensation, the Commission entered an Opinion and Award upholding Deputy Commissioner Houser's ultimate conclusion that plaintiff was not entitled to workers' compensation benefits, and denied her claim.  Plaintiff appeals.

Review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law.  This 'court's duty goes no further than to determine whether the record contains any

evidence tending to support the finding.'" *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274.

Plaintiff primarily argues that the Commission erred by concluding that she did not sustain a compensable injury by accident as a result of a specific traumatic incident arising out of and in the course of her employment. We disagree.

"In order for an injury to be compensable under the Worker's Compensation Act, a claimant must prove: (1) that the injury was caused by an accident; (2) that the injury arose out of the employment; and (3) that the injury was sustained in the course of the employment." *Wake County Hosp. Sys. v. Safety Nat. Casualty Corp.*, 127 N.C. App. 33, 38-39, 487 S.E.2d 789, 792 (1997). "The terms 'accident' and 'injury' are separate and distinct concepts, and there must be an 'accident' that produces the complained-of 'injury' in order for the injury to be compensable." *Gray v. RDU Airport Auth.*, 203 N.C. App. 521, 525, 692 S.E.2d 170, 174 (2010). "'Accident' under the Act means (1) an unlooked for and untoward event which is not expected or designed by the injured employee; (2) a result produced by a fortuitous cause." *Woodson v. Rowland*, 329 N.C. 330, 348, 407 S.E.2d 222, 233 (1991) (citation omitted). "Injury" is defined as

only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident. With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident.

N.C. Gen. Stat. § 97-2(6) (2013). "[I]ncreased volume of work is not sufficient in itself to constitute an interruption of the normal work routine or the introduction of new circumstances not part of the usual work routine[.]" *Adams v. Burlington Industries*, 61 N.C. App. 258, 261-62, 300 S.E.2d 455, 457 (1983) (citation omitted). Additionally, "the onset of pain is not a 'specific traumatic incident' that will determine whether compensation will be allowed . . . pain is, rather, as a general rule, the *result* of a 'specific traumatic incident.'" *Chambers v. Transit Mgmt.*, 360 N.C. 609, 619, 636 S.E.2d 553, 559 (2006) (citation omitted).

In the instant case, the Commission found that plaintiff was employed with defendant as an Instrument Tech, pulling surgical instruments. Although the position required lifting between 30 and 50 pounds, the surgical instruments generally did not weigh more than 40 pounds, and on an average day plaintiff would handle 600 instruments. The Commission also found

> 21. … it is plaintiff's position that she sustained an injury to her neck on February 16, 2012 and that it is this injury to the cervical spine that caused the initial symptoms in

- 6 -

her wrists and the difficulties she experienced in the ensuing months.

22. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff was performing her normal duties in customary fashion on February 16, 2012 when, at some point during the day, she developed burning in her wrists. Plaintiff did not experience an interruption of her regular work routine and the introduction of unusual conditions likely to result in unexpected consequences on February 16, 2012.

23. … [P]laintiff failed to produce evidence of a specific traumatic incident on February 16, 2012. The evidence of record failed to show that there was some event that caused the injury, and in the absence of an event, the onset of pain is not a specific traumatic incident.

Based on its findings, the Commission concluded that plaintiff "did not sustain a compensable injury by accident which would entitle her to compensation" because she did not experience an interruption of her regular work routine on 16 February 2012.

As an initial matter, plaintiff contends that the Commission ignored evidence. However, "the fact that the Commission may not have made a finding of fact regarding every piece of evidence presented does not mean that the Commission 'ignored' that evidence, but only that it did not determine that a finding of fact regarding such evidence was necessary to support its determination." *Beard v. WakeMed*, ___ N.C. App. ___, ___, 753 S.E.2d 708, 711 (2014). Additionally, this Court is "not at liberty to reweigh the evidence and to set aside the findings of the Commission, simply because other inferences could have been drawn and different

conclusions might have been reached." *Hill v. Hanes Corp.*, 319 N.C. 167, 172, 353 S.E.2d 392, 395 (1987) (citation and quotation marks omitted).

The concept of an injury that is the direct result of a "specific traumatic event" was decided by the Supreme Court of North Carolina in *Chambers v. Transit Mgmt.*, 360 N.C. 609, 636 S.E.2d 553 (2006). In *Chambers*, the plaintiff had been employed as a bus driver for Transit Management of Charlotte for approximately thirty years. 360 N.C. at 610, 636 S.E.2d at 554. During a shift, the plaintiff experienced severe pain in his arm, shoulder, and neck. *Id.* The plaintiff was diagnosed with "double crush syndrome" as a result of conditions affecting both his elbow and cervical spine. *Id.* at 611, 636 S.E.2d at 554. The Commission concluded that the plaintiff's elbow and cervical spine conditions were compensable occupational diseases, and that the injury to the plaintiff's spine qualified as a specific traumatic incident. *Id.* When asked why he believed his pain was related to his work, the plaintiff stated "[b]ecause I had no prior problems, none at all with my left arm or my hand or anything of that nature. And – but I still couldn't be a hundred percent sure that it wasn't coming from something else." *Id.* at 617-18, 636 S.E.2d at 558. According to the Supreme Court of North Carolina, since the plaintiff in *Chambers* knew of no particular inciting event during his work shift, the plaintiff's evidence did not constitute "competent evidence" to support a finding that the plaintiff experienced an event within a judicially cognizable time to meet the standard to qualify as a specific

traumatic incident. *Id.* at 618, 636 S.E.2d at 558. The Court emphasized that a claimant must demonstrate a causal connection between the specific traumatic event and the injury. *Id.*, 636 S.E.2d at 559. The fact that the plaintiff could only state he experienced pain on a particular date while driving was not enough; he also needed to present evidence linking the pain to the occurrence of an injury. *Id.* at 618-19, 636 S.E.2d at 559.

In the instant case, competent evidence supports the Commission's finding that "[p]laintiff did not experience an interruption of her regular work routine and the introduction of unusual conditions likely to result in unexpected consequences on February 16, 2012." Plaintiff testified at the hearing that she was performing her regular duties during a busy shift, but could not point to a specific event that caused her pain: "I don't know exactly what instrument. It was just so many. . . . I got hurt from lifting instruments over a period of time within the day. . . . I can't say what actually caused it, whether it was the instruments or the cart." Just as the plaintiff in *Chambers* was unable to link his pain to the occurrence of an injury, plaintiff in the instant case also described a gradual onset of pain over the course of the day without any particular inciting event during her work shift. The fact that plaintiff could only state she experienced pain on a particular date while at work, without presenting evidence linking the pain to the occurrence of an injury, is not enough to establish a specific traumatic event. *See Chambers*, 360 N.C. at 618-19, 636 S.E.2d

at 559. Additionally, the fact that plaintiff was working during a busy shift does not in itself provide grounds to find that an accident occurred. *See Adams*, 61 N.C. App. at 261-62, 300 S.E.2d at 457. Plaintiff contends that the Commission erred in relying on *Chambers* because the occupational disease standard relied on in *Chambers* is the wrong legal standard. However, plaintiff is mistaken. Although *Chambers* relies in part on the occupational disease standard, it also illustrates the requirements for a plaintiff to prove a specific traumatic incident.

Even though the Commission found and concluded that plaintiff failed to produce evidence of a specific traumatic event, she contends that her injury is compensable since Dr. Sumich's testimony indicates an exacerbation of a preexisting condition. At his deposition, Dr. Sumich testified that it was his opinion that plaintiff had an "underlying nonsymptomatic neck condition that was aggravated or exacerbated" by the alleged injury on 16 February 2012. However, Dr. Sumich also testified that it was possible that plaintiff had a degenerative condition unrelated to her employment, and that a consult from a rheumatologist indicated that plaintiff's symptoms were consistent with osteoarthritis. Dr. Sumich further clarified that the degenerative changes in plaintiff's spine would be consistent with arthritic-type changes. Plaintiff's medical records indicated that plaintiff had shoulder and back problems, including numbness and tingling. However, these injuries occurred prior to 16 February 2012. The stipulated medical records dating from immediately after

16 February 2012, as well as plaintiff's own account of her injuries, show that plaintiff's cervical complaints occurred over a month after the alleged injury.

Plaintiff failed to present competent evidence that her current neck complaints are causally related to the duties she performed on 16 February 2012. Therefore, the Commission's conclusion that plaintiff's injury was not compensable is also supported by Dr. Sumich's testimony that it was possible that plaintiff had a degenerative condition that was not related to her employment. Plaintiff's argument is without merit.

Plaintiff also argues that the greater weight of the evidence established that she was entitled to temporary total disability compensation. Specifically, plaintiff argues that she has produced evidence that she is capable of some work, but that after a reasonable effort on her part she has been unsuccessful in obtaining employment. We disagree.

Disability is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2013). A plaintiff bears the burden of showing that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citing *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982)). A plaintiff may

prove disability in one of four ways: (1) produce medical evidence that he is, physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) produce evidence that he is capable of some work, but that after a reasonable effort on his part he has been unsuccessful in obtaining employment; (3) produce evidence that he is capable of some work but that it would be futile to seek other employment because of preexisting conditions like age, inexperience, or lack of education; or (4) produce evidence that he has obtained other employment at a wage less than that earned prior to the injury. *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457.

In the instant case, it is undisputed that plaintiff is capable of some work, has been unsuccessful in obtaining any other employment, and that seeking other employment is not futile because of some preexisting condition. Therefore, the only question is whether plaintiff presented sufficient credible evidence that she made a reasonable effort to obtain employment.

Plaintiff testified at the hearing that she continued to work during the time Dr. Ternes and Dr. Sumich treated her. Plaintiff also presented two logs of her job search into evidence. The first log indicates that plaintiff applied for eighteen jobs between August and October 2012. However, plaintiff did not apply for any jobs between October 2012 and April 2013. The second log indicates plaintiff applied for

eight jobs during April and May of 2013. Both logs indicate the only applications plaintiff submitted were for positions with defendant.

The Commission found that plaintiff applied for several positions with defendant between August and November 2012. The Commission also found that "[p]laintiff presented no evidence that she looked for work during the period from November 6, 2012 to April 9, 2013. Approximately one month prior to the hearing before the Deputy Commissioner, plaintiff began looking for a job but limited her search to positions with defendant." Since the Commission is the sole judge of the credibility of the witnesses, and it rejected plaintiff's evidence that she made a reasonable effort to obtain other employment, plaintiff did not meet her burden of showing the existence of a disability.

In conclusion, the Commission found that plaintiff failed to produce evidence of a specific traumatic incident on 16 February 2012, and concluded that although plaintiff presented evidence that she experienced pain on that date, "she presented no evidence linking that pain to the occurrence of a specific incident." Although plaintiff was injured, in the absence of an event, the onset of pain is not a specific traumatic incident. Therefore, plaintiff did not sustain an injury by accident as defined in N.C. Gen. Stat. § 97-2(6) as a result of a specific traumatic incident on 16 February 2012, and her claim must be denied. Furthermore, plaintiff did not meet her burden of showing the existence of a disability. Since the evidence supports the

Commission's findings of fact, and the Commission's findings support its conclusion that plaintiff did not sustain a compensable injury, plaintiff is not entitled to temporary total disability compensation. We affirm the Commission's Opinion and Award.

AFFIRMED.

Judges STROUD and McCULLOUGH concur.

Report per Rule 30(e).