IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-889

Filed 6 August 2025

Edgecombe County, Nos. 20 CRS 051207-320, 20 CRS 051208-320, 20 CRS 051209-320

STATE OF NORTH CAROLINA,

v.

TELVIN JENKINS, Defendant.

Appeal by Defendant from judgment entered 12 February 2024 by Judge Brenda Green Branch in Edgecombe County Superior Court. Heard in the Court of Appeals 22 May 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jeanne Washburn, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M. Gomez, for Defendant–Appellant.*

MURRY, Judge.

Telvin Jenkins (Defendant) appeals the trial court's (1) jury instruction on self-defense, (2) finding that the State did not violate pretrial discovery rules, (3) denial of his motion to dismiss for purportedly misinterpreting N.C.G.S. § 14-34.10, and (4) entrance of judgment under that same statute. For the reasons below, we dismiss in part on the first issue, hold no error in part on the second and third issues, and vacate and remand for resentencing in part on the fourth issue.

## I.    Background

On 13 June 2020, Rosa Powell Harris was driving on a local road when Defendant pulled up beside her and fired into her vehicle. The bullet shattered Harris's window, entered her left arm, and lodged into her back near her right scapula. After being shot, Harris drove herself home where her daughter called the police.

Harris purportedly identified Defendant by name prior to her hospital transfer. First to arrive at the scene, Detective Austin V. Holland spoke with Harris before paramedics arrived. After Harris's departure for the hospital, Harris's daughter identified Defendant as the shooter to Detective Holland. Captain Bryan T. Corey interviewed Harris at the hospital later that day, at which point she identified Defendant as the shooter. Captain Corey noted in the post-interview report that Harris "believed it was" Defendant who shot her and that, when "asked . . . why . . . she th[ought]" so, she "stated her grandson and [Defendant] ha[d] been having problems."

On 24 July 2020, Defendant moved to compel discovery by requesting "copies of all statements of any . . . witnesses for the State." In June 2022, the State informed Defendant's counsel that discovery was available through North Carolina Criminal Discovery Automated System, that he could view physical evidence in-person, and that supplemental discovery remained available. The State provided discovery related to Harris's statements that she "believe[d] it was [Defendant]" who shot her.

On 31 May 2022, a grand jury indicted Defendant for attempted first-degree murder, assault with a deadly weapon with intent to kill and inflicting serious injury (AWDWIKISI), discharging a weapon into a conveyance in operation (DW-Into), discharging a firearm within an occupied enclosure to incite fear (DW-Within), and possession of a firearm by a convicted felon. N.C.G.S. § 14-17(a) (attempted murder); *id.* § 14-32(a) (AWDWIKISI); *id.* § 14-34.1(b) (DW-Into); *id.* § 14-34.10 (DW-Within); *id.* § 14-415.1(a) (firearm possession). The matter came to trial on 12 February 2024.

In its opening statement, the State noted Harris's intent to identify Defendant in open court as the individual who shot her. Harris so identified him, testifying that she would never "forget the face [she] saw that day when that person was shooting at [her]" and that she had no "doubt in [her] mind about who [she] saw [shoot] her." She also purported to identify Defendant to law enforcement on the day of the incident. Detective Holland testified that Harris did not identify any suspect when he interviewed her, while Captain Corey testified that Harris identified the shooter at the hospital because her grandson and Defendant "ha[d] problems." At the close of the State's evidence, Defendant moved to dismiss all indictments. The trial court denied Defendant's motion, finding "ample evidence to go before the jury and let the jury decide at this time." Defendant offered no evidence in his own defense.

Thereafter, the trial court conducted a charge conference, where the State submitted its requested jury instructions. The trial court asked Defendant's counsel if he had anything to add. Defendant's counsel affirmed that "everything else [was]

fine." With all parties present, the trial court went through each charge individually. At the conclusion of the conference, Defendant's counsel reaffirmed his "satisf[action] with the way the instructions are to be read to the jury." The trial court then instructed the jury on all charges, including first-degree murder, stating that a finding of self-defense would preclude a guilty verdict as to that charge. It instructed the jury, in relevant part, to a possible self-defense claim if Defendant "believed it . . . necessary to use potentially deadly force against the victim in order to save himself from death or great bodily harm." The trial court stated that it made this instruction because, "for you to find . . . [him] guilty of attempted first-degree murder, the State must first prove beyond a reasonable doubt, . . . that . . . [D]efendant did not act in self-defense."

On 14 February 2024, the jury found Defendant guilty of Class B2 felony attempted first-degree murder, Class C felony AWDWKISI, Class C felony DW-Into, Class F felony DW-Within, and Class G felony possession of a firearm by a felon. Following the jury verdict, Defendant's counsel renewed his motion to dismiss, this time arguing that the State violated pretrial discovery rules by failing to disclose that Harris would identify Defendant in the courtroom. He argued that Harris's in-court identification "was something that we had not had, in any sort of clear and concise way, been given additional discovery after there had been a meeting between the State and [Harris]." In response, the State argued that it was unnecessary to "spell out" Harris's testimony and that "the State [wa]s allowed to elicit in-court

identification." The trial court denied Defendant's motion, finding that "enough was said to put [Defendant's counsel] on notice that [Defendant] had been identified at the scene." Finding Defendant a prior offender with a prior record level (PRL) III, the trial court consolidated the convictions for AWDWIKISI, DW-Into, and DW-Within and sentenced him to 96–128 months to run consecutively to the attempted murder conviction.[1] Defendant timely appealed.

## II.  Jurisdiction

Under N.C.G.S. § 7A-27, this Court has jurisdiction to hear Defendant's appeal of the trial court's "final judgment." N.C.G.S. § 7A-27(b) (2023).

## III.  Analysis

On appeal, Defendant argues that the trial court erred by (1) instructing the jury on an opinionated self-defense theory,[2] (2) ruling that the State complied with pre-trial disclosure requirements, (3) misinterpreting § 14-34.10 to find sufficient evidence of the underlying charge, and (4) entering judgment in violation of the " 'unless covered' provision" in § 14-34.10. *See* N.C.G.S. § 14-34.10 (2023). We review the first, third, and fourth issues *de novo*, *see, e.g.*, *State v. Chavis*, 278 N.C. App. 482,

---

[1] The trial court also sentenced Defendant to 207–261 months for attempted first-degree murder and 17–30 months for possession of firearm by felon.

[2] In his reply brief, Defendant raises an ineffective-assistance-of-counsel claim if, "alternatively, . . . this Court rules that Defendant's counsel invited the erro[neous]" jury instruction. Because an appellant must limit his reply brief to *only* "a concise rebuttal" of those "arguments set out in the appellee's brief" left unaddressed in his "principal brief," N.C. R. App. P. 28(h), Defendant waives this claim of ineffective assistance of counsel, *see id.* 28(b)(6).

487 (2021) (expressed opinions); *State v. Bediz*, 269 N.C. App. 39, 42 (2019) (evidence sufficiency); *State v. Grappo*, 271 N.C. App. 487, 491 (2020) (statutory mandate), but review discovery-violation claims only for an abuse of discretion. *State v. Gillespie*, 362 N.C. 150, 154–55 (2008). For the reasons below, this Court holds that the trial court did not err in determining the first three issues but did err in part by sentencing Defendant under § 14-34.10.

## A. Self-Defense Instruction

First, Defendant claims that "the trial court expressed an opinion on the evidence by instructing the jury on self-defense . . . [without] evidence [to] support[ ] the instruction." We dismiss Defendant's argument as invited error.

The State argues that Defendant invited error by agreeing to the jury instructions, thereby barring appellate review. Generally, we review jury instructions for plain error if a defendant fails to object at trial. *State v. Plotz*, 295 N.C. App. 404, 411 (2024). But where a defendant fails to object to the jury instructions and instead expressly agrees with them, he waives any "right to all appellate review concerning the invited error, including plain[-]error review." *State v. Barber*, 147 N.C. App. 69, 74 (2001); *see State v. White*, 349 N.C. 535, 570 (1998) ("Where a defendant tells the trial court that he has no objection to an instruction, he [can]not . . . complain on appeal."). Here, Defendant did not object to the self-defense instruction, despite having at least three opportunities to do so. Defendant confirmed his satisfaction "with the way the instructions are to be read to the jury" and had "nothing to add [or]

take away, or [any] concern[s] with the jury charge." Because his counsel repeatedly affirmed the jury instructions, Defendant waives the right to appellate review on this issue. *See Barber,* 147 N.C. App. at 74. Thus, this Court dismisses Defendant's argument as unpreserved.

## B. Discovery Violations

Second, Defendant argues that the trial court abused its discretion by denying his motion to dismiss based on the State's discovery violations under N.C.G.S. § 15A-903. For the following reasons, we disagree with Defendant and find no abuse of discretion on this point.

Our discovery statutes and "procedures . . . protect the defendant from unfair surprise." *State v. Tucker,* 329 N.C. 709, 716 (1991). Upon a defendant's motion, the State must "make available to . . . [him] the complete files of all law enforcement agencies, investigatory agencies, and prosecutors' offices involved in the investigation of the crimes committed or [his] prosecution." N.C.G.S. § 15A-903(a)(1) (2023). Discovery documents generally include oral statements except those "made by a witness to a prosecuting attorney outside the presence of a law enforcement officer," in which case her statement must be provided only if it contains "*significantly* new or different information" from her prior statements. *Id.* § 15A-903(a)(1)(c) (emphasis added); *see id.* § 15A-907 (recognizing State's "continuing duty to disclose").

As noted above, questions of discovery-rule compliance are within the trial court's sound discretion. *See Denton v. Peacock,* 97 N.C. App. 97, 100 (1990).

Defendant claims Harris's in-court testimony conflicts with her prior statement that "she believe[d] it was" Defendant because "her grandson and [Defendant] ha[d] been having problems." Defendant's argument is two-fold: (1) Harris's prejudicial identification of him evolved from a circumstantial assumption to an eyewitness identification amounting to "significantly new or different," *id.*," information, and (2) the State's failure to disclose it forced him to present "a defense on the fly."

The trial court did not abuse its discretion here. Defendant was on notice that he "had been identified at the scene . . . as being the perpetrator." The trial court found that the State did not violate discovery rules because there were "enough indicators" for the Defendant "to prepare and mount a proper defense . . . based on what was in discovery." The trial court's determination that the State complied with discovery under N.C.G.S. § 15A-903 was not so "manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *Hammond v. Saini*, 229 N.C. App. 359, 370 (2013), *aff'd, modified on other grounds*, 367 N.C. 607 (2014). Thus, this Court holds that the trial court did not abuse its discretion in finding that the State complied with discovery.

## C. Evidence Insufficiency

Third, Defendant argues that the trial court erred in denying his motion to dismiss because the State offered insufficient evidence to support the charge of "discharging a firearm within an occupied enclosure with intent incite fear." N.C.G.S. § 14-34.10 (citation modified). Both he and the State characterize this argument as a

matter of statutory misinterpretation, suggesting that the "evidence . . . support[s] a conviction for discharging a weapon *into* an occupied property" à la N.C.G.S. § 14-34.1(b) "but *not* [for] discharging a weapon *within* a vehicle" under N.C.G.S. § 14-34.10.[3] (Second emphasis added).

Defendant expressly recognizes the sufficiency of the State's evidence under the former interpretation, just not the latter. We thus analyze this question only in terms of the challenged statutory language because his motion to dismiss hinges on § 14-34.10's meaning. If § 14-34.10 required the trial court to instruct the jury that both Defendant *and* Harris must have been "within [*one*] occupied motor vehicle" as of "discharge" to merit conviction, then it erred by instructing the jury on that count. N.C.G.S. § 14-34.10. But if that same statute requires that *only* he "discharge[d] a firearm within" either his *or* Harris's "occupied . . . vehicle," then the trial court did not so err. *Id.* For the reasons discussed below, we read § 14-34.10 as the latter meaning and thus find no error.

### 1. *Statutory Interpretation Generally*

Given our heightened responsibility to prudentially interpret punitive

---

[3] As discussed further below, § 14-34.10 criminalizes multiple separate elements. On appeal, Defendant purports to challenge only whether he "discharge[d] a firearm within any occupied . . . motor vehicle" as a question of statutory interpretation. N.C.G.S. § 14-34.10 (2023). Thus, we assume *arguendo* that Defendant stipulates to the remaining elements. We also make no distinction between a "motor vehicle" and any of the statute's other five types of enumerated "enclosure[s]" for the purposes of this analysis. *Id.*; *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (1st ed. 2012) [hereinafter Scalia & Garner, *Reading Law*] ("When there is a straightforward, parallel construction . . . [of] all nouns in a series, a . . . modifier normally applies to [its] entire[ty].").

statutes, we pause to outline certain principles that guide our comparative analysis of §§ 14-34.9 and -34.10. *See, e.g.*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 296 (1st ed. 2012) [hereinafter Scalia & Garner, *Reading Law*] ("The rule of lenity . . . rest[s] . . . at least on the judge-made public policy that a legislature *ought* not to" "decree punishment without making clear what conduct incurs [it] . . . ."). When interpreting statutes, we first "examin[e] . . . the[ir] plain words." *Belmont Ass'n v. Farwig*, 381 N.C. 306, 310 (2022) (quotation omitted). The foundational statute relevant for our purposes, § 14-34.1, criminalizes "[a]ny person who willfully discharges any firearm into any vehicle while it is occupied." N.C.G.S. § 14-34.1(a) (2023) (emphases added; ellipses omitted), *enacted as amended by* Act of Apr. 28, 1969, ch. 341, 1969 N.C. Sess. Laws 291. A subsequent statute built upon § 14-34.1's language, § 14-34.9, similarly sanctions "any person who willfully discharges a firearm, as a part of criminal gang activity, *from within* any motor vehicle *toward* a person *not within* that [vehicle]." *Id.* § 14-34.9 (emphases added; ellipses omitted), *amended by* Act of Dec. 1, 2017, S.L. 2017-194, sec. 6, 2017 N.C. Sess. Laws 1370, 1372 [hereinafter 2017 Amendment] (amending "*a pattern of* criminal *street* gang activity" to only "criminal gang activity" (emphases added)). Finally, the statute directly challenged by Defendant here, § 14-34.10, criminalizes "any person who willfully discharges a firearm *within* any occupied motor vehicle with the intent to incite fear *in another*." *Id.* § 14-34.10 (emphases added; ellipses omitted), *enacted by* Act of June 19, 2013, S.L. 2013-144, 2013 N.C. Sess. Laws 351.

We apply "[o]rdinary rules of grammar" to construe these material terms so emphasized "according to the context and approved usage of the[ir] language." *Dunn v. Pac. Emps. Ins. Co.*, 332 N.C. 129, 134 (1992). We further "employ[ ] canons of statutory interpretation" to supplement these grammatical strictures,[4] *State v. Campbell*, 285 N.C. App. 480, 487 (2022), all of which we presume "the General Assembly . . . to have acted . . . with a knowledge of," *People's Bank v. Loven*, 172 N.C. 666, 670 (1916). One general canon most appropriately applies here: the Related-Statutes Canon,[5] *see* Scalia & Garner, *Reading Law* 252, where "statute[s] dealing with the same subject matter must be considered and interpreted as" a single organic act. *State v. Rankin*, 371 N.C. 885, 889 (2018) (quotation omitted). Within these challenged statutes, basic and complex grammar rules govern "[t]he particular meaning of a qualifying modifier," Günter Radden & René Dirven, *Cognitive English Grammar* 144 (Cognitive Linguistics in Prac. Vol. 2, 2007) [hereinafter Radden & Dirven, *Grammar*], *i.e.*, "within any occupied . . . motor vehicle," N.C.G.S. § 14-34.10.

---

[4] By "canons," we mean only those generally accepted jurisprudential "rules of interpretation . . . so commonsensical" as to merit blackletter status themselves. Antonin Scalia, *A Matter of Interpretation* 25–26 (new ed. 2018). We recognize that "[e]very canon is simply *one indication* of meaning" that "must yield" to "more contrary indications." *Id.* at 27. *See generally* 27 N.C. Index 4th *Statutes* § 25, Westlaw (database updated July 2025) (outlining North Carolina's "[b]asic principles of statutory construction").

[5] Although it goes by many names, this canon reflects the longstanding principle that "statutes addressing the same subject matter generally should be read" "*in para materia*" "as if they were one law." Lisa Schultz Bressman et al., *The Regulatory State* 208–09 (3d ed. 2020) (describing various "Whole Code Canons") (quotation omitted). *But see* Scalia & Garner, *Reading Law* 167 (defining as singular "whole-text canon").

Certain secondary interpretive canons also reflect these core indications of syntax, *e.g.*, the "last-antecedent canon," Scalia & Garner, *Reading Law* 144, the "series-qualifier canon," *id.* at 147, and the "nearest-reasonable-referent canon," *id.* at 152. And as a last resort before finding a particular statute ambiguous, we "examine . . . clarifying . . . amendments" to its "previously enacted words" for reliable "evidence of legislative intent" in concert with these interpretive tools. *Hanson v. Charlotte–Mecklenburg Bd. of Educ.*, 387 N.C. 445, 446–47 (2025) (Newby, C.J. concurring). With these principles in mind, we now turn to the relevant General Statutes' article on firearm discharges as interpreted *in para materia*. N.C.G.S. ch. 14, subch. III, art. 8 [hereinafter Article 8]. This Court has not specifically interpreted *within* as used in Article 8 and thus reviews it now as an issue of first impression.

### 2. *Section 14-34.10 Considered*

As noted above, Defendant asserts that he could not have "discharg[ed] a weapon *within* a vehicle" under § 14-34.10 because, even though he "was inside *a* vehicle and fired a gun 'into' Harris's occupied vehicle[, n]either . . . [he] nor the gun were *within*" the latter vehicle as of the discharge. (Emphases in original.) As shown below, we disagree with Defendant because his argument incorrectly interprets this statute on its own terms.

In relevant part, § 14-34.10 states that (1) "any person" (2) "who willfully" (3) "discharge[s] a firearm" (4) "within any occupied motor vehicle" (5) "with the intent to incite fear" (6) "in another" is guilty of a felony. N.C.G.S. § 14-34.10 (ellipses

omitted). The question is to what extent, if any, the fourth element of *within any occupied motor vehicle* modifies its surrounding elements. The contextual meaning of *within* as either a "prenominal . . . or postnominal modifier[ ]" is "determined by three elements: its lexical meaning[ ], its grammatical form, and its syntactic position *relative to the head noun.*" Radden & Dirven, *Grammar* 144 (emphasis added; boldface omitted). No one contests either the lexical meaning or grammatical form of *within* in a vacuum, at least as part of its core prepositional phrase.[6] It denotes a required position "inside the limits" or "interior part of" a vehicle; nothing less, nothing more. *Within, Black's Law Dictionary* (6th ed. 1990) [hereinafter *Black's Law*]. That leaves us to identify the statute's head noun that *within* syntactically modifies by "analy[zing] . . . the position of these words in the sentence" itself. Ingo Plag et al., *Introduction to the English Linguistics* 126–27 (3d rev. & enl'd ed. 2015) [hereinafter Plag et al., *Introduction*]; *accord* Elly van Gelderen, *An Introduction to the Grammar of English* 45 (rev. ed. 2010) (describing a prepositional "phrase [a]s a group of words . . . united around a head, *e.g.*, a noun or a verb").

### a. Plain Meaning of "Within"

To determine § 14-34.10's plain meaning of *within*, we contextualize the

---

[6] Nor could they in any plausible sense. *See, e.g.*, *Within, Merriam-Webster's Collegiate Dictionary* (11th ed. 2020) (defining as "into the interior" and "as a function word to indicate enclosure or containment"); *Within, Cambridge Advanced Learner's Dictionary* (4th ed. 2013) (defining as "inside or not beyond (a particular area)"); *Within, American Heritage College Dictionary of the English Language* (5th ed. 2011) (defining prepositional form as "[i]n the inner parts or parts of; inside").

statutory language "in a manner which harmonizes . . . the other provisions of the statute and . . . gives effect to [its] reason and purpose." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 215 (1990). The General Statutes' Chapter 14 does not define *within* despite using it 281 times throughout. *See* N.C.G.S. ch. 14 (delineating "Criminal Law"); *e.g.*, *id.* § 14-27.20 (defining material terms of Article 7B's "Rape and Other Sex Offenses"). Therefore, our interpretation of § 14-34.10 begins with a grammatical analysis of its terms.

The prepositional phrase *within any occupied motor vehicle* most reasonably modifies its head noun *person* because, although a "postpositive modifier normally applies only to [its] nearest reasonable referent," Scalia & Garner, *Reading Law* 152, "the head projects its properties onto the phrase *as a whole*," Plag et al., *Introduction* 125 (emphasis added; boldface omitted); *cf., e.g.*, Bryan A. Garner, *Garner's Modern English Usage* 1213 (5th ed. 2022) [hereinafter Garner, *Modern English*] ("For example, in *the tall man in the front row*, the word *man* is the head of the noun phrase.").

*First*, *firearm* is logically closer to the postpositive modifier *within* than either of the two other possible head nouns, *person* or *another*. The phrase could plausibly modify *a firearm* in addition to *any person*[7] but certainly not the subsequent *in*

---

[7] Addressing this secondary distinction would hardly be an exercise in hair-splitting. In *State v. Mancuso*, 321 N.C. 464 (1988), our Supreme Court had to assess "discharging a firearm *into* any vehicle" when "the gun was inside the victim's car when discharged" but "the defendant was standing

- 14 -

*another* that already postpositively modifies its own head noun, *fear. Second*, *person* forms a syntagm with *within any occupied motor vehicle*. N.C.G.S. § 14-34.10. This adjunct adverbial prepositional phrase syntactically "answers the questions" of " 'when?', 'where?', and 'how?' " Defendant must "express the place or manner" of his firearm discharge. Laurel J. Brinton & Donna M. Brinton, *The Linguistic Structure of Modern English* 220 (rev. ed. 2010) (citation modified) [hereinafter Brintons, *Linguistic Structure*]. And as a postpositive modifier, the phrase forms a "one-way dependency" with *person* as the "essential center of the constituent" syntax. *Id.* at 188. *Within* likely does not act upon either *firearm* or *person* when comparing the grammatical integrity of would-be § 14-34.10s that respectively omit *any person who*, *a firearm*, and *in another*:

> (1) . . . [W]illfully discharges a firearm within any occupied motor vehicle with the intent to incite fear in another shall be punished.
> (2) Any person who willfully discharges . . . within any occupied motor vehicle with the intent to incite fear in another shall be punished.
> (3) Any person who willfully discharges a firearm within any occupied motor vehicle with the intent to incite fear . . . shall be punished.

N.C.G.S. § 14-34.10 (citation modified). The statutory "sentence is grammatical without" either *a firearm* or *in another*. Brintons, *Linguistic Structure* 220. An element that requires "the intent to incite," N.C.G.S. § 14-34.10, an abstract

---

*outside* of it." *Id.* at 468 (emphases added; citation modified) (quoting N.C.G.S. § 14-34.1(2) (1987)). But because Defendant here only asserts that "discharge . . . within any motor vehicle" must occur with both him and Harris *in the same* vehicle, we need not conclusively resolve this possible "modification ambiguity" here. Bryan A. Garner, *Garner's Modern English Usage* 1192 (5th ed. 2022).

"negative feeling that *a person* experiences," *Fear*, *Black's Law* (12th ed. 2024) (emphasis added), also more readily implies *in another* than would *any person* imply absent *a firearm*, N.C.G.S. § 14-34.10. *Within any occupied motor vehicle* clearly "expresses some quality" of *person* and "can[ ] occur without" *another* in the same sentence. Brintons, *Linguistic Structure* 188. By contrast, a *pre*modified reading of this prepositional phrase would impermissibly broaden the plain text of this statute. *See* Scalia & Garner, *Reading Law* 152.

### b. Plain Meaning of "Occupied"

Having addressed the meaning of *within*, we now turn to *occupied*. Sections 14-34.1(b), 14-34.9, and 14-34.10 do not define this latter term despite all requiring it as part of an element. Absent a compelling contextual or controlling judicial definition, our courts rely on accepted dictionaries to determine plain meaning. *See* Scalia & Garner, *Reading Law* 415–24; *Clark v. Sanger Clinic, PA*, 142 N.C. App. 350, 356 (2001). Reflecting this principle, an individual "occupies a particular place," Garner, *Modern English* 769, by "tak[ing] possession" or "control of [that] place," however "briefly," *Occupy*, *Black's Law* (parentheses omitted). *Accord Occupy*, *American Heritage Dictionary of the English Language* (5th ed. 2011) ("To fill up (time or space)"); *Occupy*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2020) ("To take up (a place or extent in space)").

Here, Defendant admits to "firing a gun 'into' Harris's occupied vehicle" while "inside his vehicle," *i.e.*, while "occupying" it. (Brackets omitted.) Coupled with

§ 14-34.10's textual allowance for "*any* motor vehicle" and thus *not* only the victim's, the plain meaning of "discharg[ing] a firearm within any motor vehicle" clearly encompasses these facts for the purpose of characterizing Defendant's conduct. N.C.G.S. § 14-34.10 (ellipses omitted). He would have this Court rewrite the statute to instead punish "discharg[ing] a firearm within any occupied motor vehicle with the intent to incite fear in [some] [ ]other" (person also located within the occupied vehicle). *Id.* (ellipses omitted). In reviewing Defendant's motion to dismiss on appeal, we need only determine whether the State offered sufficient evidence that Defendant himself fired his gun "within *any* occupied motor vehicle"—a standard it met here. *Id.* (emphasis added). Thus, we hold that *only* the "person who willfully . . . discharges a firearm" must be "within a[ ] vehicle" according to the plain, self-contained meaning of N.C.G.S. § 14-34.10. *Id.*

### 3. Section 14-34.9 Contrasted

Filtered through jurisprudential canons more abstract than basic English grammar, though, § 14-34.9's specific language further implies § 14-34.10's more general applicability to Defendant's conduct. As noted above, the former statute punishes "any person who willfully discharges a firearm *from within* any motor vehicle *toward* a person *not within* that enclosure" "as part of criminal gang activity." N.C.G.S. § 14-34.9 (2023) (emphases added; ellipses omitted). Read *in para materia* with § 14-34.10, § 14-34.9's "material variation" in prepositional phrasing, Scalia & Garner, *Reading Law* 170—to say nothing of its gang-related "subsequent

enactment," *id*. at 255—support our conclusion that both Defendant and the State too strictly construe the former statute to match the latter in meaning.

At the outset, § 14-34.9 is a conspicuously detailed statute relative to its comparable proscriptions. It specifically forbids anyone from firing a gun using three discrete adjunct adverbial prepositional phrases, *from within*, *toward*, and *not within*, which collectively denote an interaction between two distinct "person[s] . . . from within any enclosure" and "not within that [same] enclosure." N.C.G.S. § 14-34.9. But its sibling statutes merely forbid *one* "person" from doing so either "into," *id*. § 14-34.1(b), "at or into," *id*. § 14-34.1A(b), or "within any occupied . . . motor vehicle," *id*. § 13-34.10.

We presume that the General Assembly "purposefully . . . includes or excludes" "particular language in one section" when "omitting it in another section of the same Act." *N.C. Dep't of Rev. v. Hudson*, 196 N.C. App. 765, 768 (2009) (quotation and brackets omitted). Our appellate courts over the decades have interpreted § 14-34.1's use of *into* to the exclusion of any other directional preposition. *E.g.*, *State v. Mancuso*, 321 N.C. 464, 468 (1988) (interpreting N.C.G.S. § 14-34(2) (1987)); *State v. Canady*, 191 N.C. App. 680, 687 (2008) (interpreting N.C.G.S. § 14-34(a) (2007)); *State v. Hicks*, 241 N.C. App. 345, 353 (2015) (interpreting N.C.G.S. § 14-34.1 (2013)). Our research reveals only one decision to so much as mention *within*, *State v. McLean*, 251 N.C. App. 850 (2017), which threw out the defendant's conviction because his original "indictment alleged that [he] discharged a firearm 'into' an occupied

structure" even though § 14-34.10 required he do so "within" one. *Id.* at 854 (citing N.C.G.S. § 14-34.10(a) (2015)).

Albeit elongated, the multi-prepositional phrase "from within any motor vehicle toward a person not within that enclosure" collectively modifies "any person," N.C.G.S. § 14-34.9 (2023) (ellipses omitted), in the same way as does "within any occupied vehicle" alone, *id.* § 14-34.10 (ellipses omitted). The additional *not within that enclosure* subclause does not change this analysis because it merely postmodifies *a person* as a secondary "phrasal preposition" within the larger sentence, Garner, *Modern English* 1234 (boldface omitted). One leading English grammar treatise helpfully analogizes two distinct prepositional modifications of the example phrase *a book in the library on campus*:

> Here, "in the library" modifies "book" and "on campus" modifies "the library." *A cat on the mat in the hallway* would have the same structure, but the superficially similar *a cat on the mat with long whiskers* would not since "with long whiskers" modifies "the cat," not "the mat."

Brintons, *Linguistic Structure* 201 (citation modified). Section 14-34.9 uses the same syntax as this feline example while addressing a much weightier issue. *From within* and *toward* jointly modify *any person* in the same way as *with long whiskers* and *on the mat* jointly modify *cat*. The additional specificity of *from* and *toward* merely the gild the lily of the General Assembly's textualized intent to address "criminal gang activity," N.C.G.S. § 14-34.9, occurring between "premises owned by one person [and] premises owned by another," *From One Place to Another*, *Black's Law* (6th ed. 1990).

They do not retroactively alter Article 8's use of *within* to describe the "interior part of," *Within, Black's Law*, "*any . . .* motor vehicle." N.C.G.S. §§ 14-34.9–.10 (emphasis added).

The General Assembly's 2017 "altering amendment" to further particularize § 14-34.9's focus on gang activity informs this choice of detailed verbiage. *Hanson*, 387 N.C. at 446. Our courts frequently look to "statutory history" to interpret a particular statute because "a change in [its] language . . . presumably connotes a change in meaning." Scalia & Garner, *Reading Law* 256 (emphasis omitted); *e.g.*, *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 8–9 (2012) (distinguishing between "clarifying amendments" that merely inform a "law's application from its original enactment" and "altering amendments" that actually "change its substance" (citation modified)); *State v. Dickerson*, 125 N.C. App. 592, 595 (1997). The original § 14-34.9 punished the aforementioned conduct only if committed "as a part of ~~a pattern of~~ criminal ~~street~~ gang activity." North Carolina Street Gang Suppression Act, S.L. 2008-214, sec. 2, 2008 N.C. Sess. Laws 935, 935 (strikethroughs added). In pursuit of "enhanced punishment of criminal gang activity" at a more granular level, 2017 Amendment pmbl. at 1370, the General Assembly deleted the "pattern of" language from § 14-34.9 and other related statutes while leaving § 14-34.10 entirely untouched between then and now, *e.g.*, *id.* sec. 6, § 14-34.9; *id.* sec. 12, § 14-50.23(a). These materially specific legislative changes to § 14-34.9's substantive language speak to a General Assembly that sought to address the specific public policy issue of drive-by shootings. The

similarly tightened "from within . . . toward" language thus does not constrict the meaning of comparable conduct otherwise "[un]related to gang activity." N.C.G.S § 14-34.10. Instead, we read § 14-34.10 as an umbrella statute that intentionally captures fear-causing gunfire from *any* occupied enclosure.

### 4. *Facts at Hand*

As noted above, Defendant acknowledges the evidence's tendency to show that he "fired a gun 'into' Harris's occupied vehicle" while "inside [his] vehicle." He shot "within *any* occupied . . . motor vehicle," *id.*—here, his own. Viewing "the evidence in the light most favorable to the State," *State v. Franklin*, 327 N.C. 162, 171 (1990), Defendant "pulled up beside [Harris] and opened fire" from the "interior part of," *Within*, *Black's Law*, his own "Gray Honda" into Harris's occupied "white Dodge Caravan" "to incite fear in" her, N.C.G.S. § 14-34.10. The State's evidence reasonably leads" to a "logical and legitimate deduction," *Franklin*, 327 N.C. at 171, satisfiable to "a reasonable juror," *id.* at 173, that Defendant "discharge[d] a firearm within" his own "occupied . . . motor vehicle" when he shot at Harris "with intent to incite fear," N.C.G.S. § 14-34.10. Thus, this Court holds that the trial court did not err in denying his motion to dismiss on contrary grounds.

### D. Conviction under N.C.G.S. § 14-34.10

Fourth and finally, Defendant argues that the trial court erred by convicting him of DW-Within when other statutes cover his conduct and "provid[e] greater punishment," *compare id.* § 14-34.10 ("punished as a Class F felon"), *with id.*

§ 14-17(b) ("punished as a Class B2 felon"), *id.* § 14-32(a) ("punished as a Class C felony"), *and id.* § 14-34.1(b) ("guilty of a Class D felony").[8] We agree with Defendant on this point. Although the trial court did not err by finding sufficient evidence for the DW-Within offense, it did err by sentencing him under the organic statute when others carried greater sentences within the same indictment. Once the trial court sentenced Defendant for attempted murder, AWDWIKISI, and DW-Into, it should have arrested judgment on his DW-Within conviction. Thus, this Court vacates the DW-Within sentence and remands in part with instructions to arrest judgment and resentence Defendant.

### 1. *Preservation*

At the outset, Defendant impliedly concedes that he did not expressly object to the alleged error at trial. As a result, "we must decide whether [he] preserved his argument[ ] for appellate review." *State v. Davis*, 364 N.C. 297, 301 (2010). Section 14-34.10 (among other statutes) prohibits a trial court from entering a sentencing judgment if "some other provision of law provid[es] greater punishment" for the statute's proscribed conduct. N.C.G.S. § 14-34.10; *accord, e.g., id.* § 20-141.4 (criminal death by vehicle); *id.* § 50B-4.1(d), (f)–(g1) (protective-order violation). This prefatory

---

[8] We that note the trial court misclassified Defendant's DW-Into conviction as a Class C felony instead of a Class D felony. *See* N.C.G.S. § 14-34.1(b) (2023). Although not raised on appeal, this error is harmless because Defendant's consolidated sentence includes AWDWIKISI as a Class C felony. While the trial court may wish to correct this judgment for accuracy, doing so will not change Defendant's sentence. We more appropriately characterize Defendant's DW-Into conviction as a Class D felony throughout this opinion.

clause is "a statutory mandate" that a trial court must follow. *State v. Ashe*, 314 N.C. 28, 39 (1985). The record does not indicate whether the trial court "review[ed] [D]efendant's argument that . . . [it] lacked statutory authority to sentence him for" the felony DW-Within. *Davis*, 364 N.C. at 302. Because a possible conclusion that it lacked this authority could have resulted in at least one less sentence, this lack of documented assessment prejudiced Defendant's case at bar. *Id.* Thus, his "right to appeal the [trial] court's action is preserved, notwithstanding [his] failure to object at trial." *Ashe*, 314 N.C. at 39.

### 2. *Interpretation*

We implement a clear and unambiguous statute "according to the plain meaning of its terms so long as it is reasonable to do so." *N.C. Farm Bureau Mut. Ins. Co. v. Lunsford*, 378 N.C. 181, 189 (2021) (quotation omitted). Section 14-34.10's proscribed conduct is punishable "[u]nless covered under some other provision of law providing greater punishment." N.C.G.S. § 14-34.10. The trial court may enter judgment for this Class F felony *only* when the conduct remains unpunished by a higher-class offense. Because we "presum[e] that [our] legislature carefully chose each word used" in this statute, this language indicates that the General Assembly knew higher-class offenses might apply to the same conduct at issue here. *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201 (2009) (citing *Rhyne v. K-Mart Corp.* 358 N.C. 160, 188 (2004)). By incorporating this prefatory clause, "the General Assembly intended an alternative: that punishment is *either* imposed for the more heavily

punishable" § 14-34.1(b) conduct *"or* for the" less heavily punishable § 14-34.10 conduct, "but not both." *Davis*, 364 N.C. at 304.

Our Supreme Court's *State v. Davis* decision controls our analysis of this issue. In *Davis*, the defendant was driving down a highway when he collided with a family of three. *Id.* at 298–99. The husband and wife died at the scene, while the daughter suffered severe injuries but ultimately survived. *Id.* at 300. A grand jury indicted the defendant in relevant part for Class B2 felony second-degree murder, Class E felony assault, Class D felony death by vehicle, and Class F felony serious injury by vehicle. *Id.* The trial court entered judgment after the jury convicted him on all counts, to which he "did not object at sentencing." *Id.* Even so, the defendant appealed to the Supreme Court after this Court held that he "did not preserve his objection to a purported double[-]jeopardy violation."[9] *Id.* (quotation omitted).

The *Davis* Court reversed the trial court's affirmation of the two vehicle-related felony convictions because § 20-141.4 conditioned their respective punishment levels on no *"other provision of law providing greater punishment." Id.* at 302 (quoting N.C.G.S. § 20-141.4(b) (2009)). The Court reasoned that its prefatory clause demonstrated the General Assembly's awareness of "other, higher[-]class offenses"

---

[9] Although both the *Davis* defendant and Defendant here "advanced . . . double[-]jeopardy argument[s] on appeal," both "analys[e]s turn[ ] on" whether "some other provision of law providing greater punishment" covered each defendants' conduct. *State v. Davis*, 364 N.C. 297, 304–05 (quoting N.C.G.S. § 14-32.4(a)–(b) (2009)). Thus, we do not read this opinion as a double-jeopardy analysis.

that "might apply to the same conduct" "when it enacted the [then-]current version of [§] 20-141.4." *Id*. at 304. "In such situations, as in this case, the General Assembly intended an alternative: that punishment is *either* imposed for the more heavily punishable offense *or* for the [vehicular-injury] offense, but not both." *Id*. So too with § 14-34.10's identical provision relative to § 14-34.1(b), this challenged language limits "a trial court's authority to impose punishment for th[at] . . . offense[ ] when punishment is imposed for higher[-]class offenses that apply to the same conduct." *Id*. at 302.

Here, Defendant's conviction under § 14-34.1(b) carries a presumptive Class D felony sentence that is higher than the one stemming from his simultaneous conviction under § 14-34.10, which carries its own Class F felony sentence.[10] *See* N.C.G.S. § 15A-1340.17(c) tbl. (2023) (listing sentencing ranges by offense class and PRL). Based on Defendant's PRL III, his felony convictions under § 14-34.1(b) and § 14-34.10 subjected him to presumptive sentencing ranges of 67–84 and 17–21 months, respectively. *Id*. Both statutes "punish the same conduct," *Davis*, 364 N.C. at 305, even though the former "provision of law provid[es] greater punishment" than the latter. N.C.G.S. § 14-34.10. Because § 14-34.10 "does not authorize the trial court to impose" [a] sentence[ ]" for its violation, this Court holds that the trial court erred

---

[10] Defendant's Class B2 felony conviction under § 14-17(a) and Class C felony conviction under § 14-32(a) also subjects him to a presumptive sentencing range of 165–207 months and 77–96 months, respectively. N.C.G.S. § 15A-1340.17(c) tbl. (2023).

in part by sentencing Defendant for discharging a weapon within an enclosure to incite fear. *Davis*, 364 N.C. at 305.

### 3. *Arresting Judgment*

As noted above, we vacate Defendant's sentence and remand to the trial court with instructions to arrest judgment on Defendant's sentence under N.C.G.S. § 14-34.10. *See State v. Fields*, 374 N.C. 629, 636–37 (2020) (arresting judgment when a defendant was convicted under an "unless covered" and greater offense). Arresting a defendant's judgment can have one of two effects: (1) vacating the underlying judgment "because of a fatal flaw which appears on the face of the record, such as a substantive error on the indictment," *State v. Pakulski*, 326 N.C. 434, 439 (1990), or (2) "withhold[ing] the entry of judgment based on a valid jury verdict," *State v. Pendergraft*, 238 N.C. App. 516, 528 (2014) (citing *Pakulski*, 326 N.C. at 439), *aff'd by an equally divided court*, 368 N.C. 314 (2015). The latter occurs "for the purpose of addressing double jeopardy or *other concerns*"; in those cases, "the underlying guilty verdict remains intact." *Pendergraft*, 238 N.C. App. at 529 (emphasis added); *see Fields*, 374 N.C. at 636 ("Although . . . not directly based upon principles of double jeopardy," arresting judgment when convicting a defendant contrary to a statute's prefatory language "applies with equal force.").

The trial court's lack of authority to sentence Defendant for his DW-Within conviction is not due to any defect in the record. Rather, "it is based on the effect of the prefatory language" in § 14-34.10 "coupled with" Defendant's convictions arising

from the same conduct. *Fields*, 374 N.C. at 637. We do not disturb Defendant's guilty verdict. *See Pendergraft*, 238 N.C. App. at 529. Thus, this Court vacates Defendant's DW-Within conviction and remands it to the trial court with instructions to arrest judgment and resentence consistent with this opinion. *See State v. Wortham*, 318 N.C. 669, 674 (1987).

## IV.    Conclusion

For the reasons above, this Court dismisses Defendant's challenge to the jury instructions as an invited error. This Court holds that the trial court did not err (1) by finding that the State adhered to pretrial discovery rules and (2) by denying Defendant's motion to dismiss for purportedly misinterpreting N.C.G.S. § 14-34.10. But this Court also holds that the trial court erred in part by entering judgment under that same statute, thus vacating and remanding Defendant's sentence under § 14-34.10 with instructions to arrest judgment and resentence consistent with this opinion.

DISMISSED IN PART; NO ERROR IN PART; VACATED AND REMANDED IN PART.

Judges FLOOD and STADING concur.